**STATE of Missouri ex rel. Ronald M. DZURIAN and Sherry Ann Dzurian, his wife, Relators,**

v.

**Honorable Robert G. J. HOESTER, Judge of the Circuit Court, Juvenile Division of St. Louis County, et al., Respondents.**

No. 58114.

Supreme Court of Missouri,
En Banc.

April 11, 1973.

Rehearing Denied May 14, 1973.

David A. McMahon, St. Louis, for relators, Ronald M. Dzurian and Sherry Ann Dzurian.

Corinne R. Goodman, Clayton, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

SEILER, Judge.

This case presents the question of whether a juvenile court of one county which has earlier entered an order terminating the parental rights of the natural mother and ordering "the custody of said child" transferred to a named agency "for foster care and placement in the best available home . . . subject to the continuing jurisdiction of the Court", has jurisdiction to order the husband and wife (relators herein), residing in another county and with whom the agency placed the child for possible adoption, to return the child to the agency, notwithstanding relators had earlier commenced adoption proceedings in the county where they and the child resided.

What happened was that about eleven months after the agency had placed the child with relators, during all of which time the child lived with relators in their home in another county, one of the relators, Mrs. Dzurian, was involved in an attempt to aid her brother in escaping from a hospital in St. Louis where the brother was confined on felony charges. Mrs. Dzurian pleaded guilty. The court suspended imposition of sentence and placed her on probation for one year. In the meantime the agency called on Mr. and Mrs. Dzurian to return the child. The Dzurians then filed petition for adoption in the juvenile division of the circuit court of St. Louis city, which was the place of residence of the Dzurians and the child. A few days later the agency petitioned the juvenile division of the circuit court of St. Louis county, where the original order terminating the parental rights of the natural mother and transferring custody of the child to the agency for placement for adoption had been made, for an order requiring relators to deliver the child to the agency forthwith. The juvenile court, St. Louis county, entered the order and issued a capias to the police department for the child. It was at this point, after relators had first tried unsuccessfully, for a writ of prohibition in the court of appeals, St. Louis district, that prohibition was sought here and we issued our provisional rule.

The position of relators is that the juvenile division of the St. Louis county circuit court is without jurisdiction because the child was placed in the lawful and actual custody of relators in the city of St. Louis almost a year before the present dispute and has continued to live and reside in the city with the relators until the present, with the relators having filed a petition for adoption in the circuit court of St. Louis city.

Respondent judge, while conceding the juvenile division of St. Louis city circuit court has jurisdiction to hear the adoption petition, maintains it does not have exclusive jurisdiction to entertain actions concerning the welfare of the child, and therefore, that respondent, being the court which terminated the parental rights and put custody in the agency subject to the continu-

ing jurisdiction of the court, has jurisdiction to issue a capias requiring the child be returned to the agency.

Of course, whichever court emerges with jurisdiction of the child will be guided in its disposition by what is best for the welfare of the child, but this tenet does not resolve the jurisdictional issue.

In State ex rel. Grimstead v. Mueller, 361 Mo. 92, 233 S.W.2d 700, 702 (banc 1950), where it was contended the court which found the child to be a neglected and abandoned child and placed custody in the division of welfare, which in turn placed the child in the care of a husband and wife, had exclusive jurisdiction over the child until she reached her majority, and that the juvenile division of the circuit court in the county where the prospective adoptive parents and the child resided did not have jurisdiction to proceed in an adoption proceeding, this court said: " . . . 'when the juvenile court has in a given case assumed jurisdiction with respect to any such child, its jurisdiction supersedes that of any and all other courts *touching the same subject-matter.'* . . . "

In our case termination of parental rights was based on written consent by the natural mother, not on neglect, abandonment, or unfitness or incompetency of the parents. Respondent maintains he has jurisdiction by virtue of Sec. 211.041,[1] which speaks in terms of exclusive jurisdiction of cases arising under Sec. 211.031. However, the child was not before respondent for any of the reasons named in Sec. 211.031, under which respondent would retain jurisdiction. Once the parental rights are terminated by approving the consent of the natural mother thereto, that aspect of the matter is complete, without the residuals which are necessarily present in jurisdiction exercised by virtue of Sec. 211.031. Following termination of parental rights by consent, what remains is what to do with the child now that the rights of the parents have been eliminated. One possibility is adop-

tion, but that is a different subject matter entirely from termination of parental rights.

As earlier stated, respondent stresses the final clause of the order terminating parental rights which, after transferring custody to the agency, says all "subject to the continuing jurisdiction of the Court." We do not believe these words expanded respondent's lawful jurisdiction or that he thereby acquired any jurisdiction over the child he would not equally have had under appropriate circumstances without these words in the order, nor do the words override the law as declared in State ex rel. Grimstead v. Mueller, supra. To the point, also, is In re Smith, 314 S.W.2d 464, 470 (Mo.App.1958), an adoption case involving a question of jurisdiction, where the court said: " . . . It is surely fundamental and basic that the jurisdiction of any court to do any act is determined by its jurisdiction at the time its judicial process is invoked to do such act. It cannot be expanded through a mere expression of intention to retain jurisdiction . . . "

If we carry respondent's position to its logical extreme, then, even though counsel for respondent concedes the juvenile court in St. Louis city has jurisdiction to hear the adoption proceeding, the proceeding is effectively halted, because there is no way the court of adoption can proceed with the required physical and mental condition of the child, Sec. 453.070, or be sure the custody of the child will be returned to the petitioners if the court decides adoption should be decreed or that the child will be present and before the court for completion of adoption.

We doubt if such was the intention of the legislature when the statutes were enacted on the termination of parental rights, which is the way respondent entered the case. Termination of parental rights is not an end in itself. The welfare of the child requires that something more be done. The court has various alternatives, one of which

---

1. All statutory references are to RSMo 1969, V.A.M.S.

is future adoption, as chosen here when the child was transferred to the agency for "placement in the best available adoptive home." Therefore, when an adoption proceeding has been properly instituted, as in the case here, we believe it should be favored during its pendency over attempts to exercise jurisdiction over the custody of the child during that same period by the court which terminated the parental rights. See State ex rel. Catholic Charities of St. Louis v. Hoester, 494 S.W.2d 70 (Mo.), handed down concurrently herewith.

In the case at bar the agency evidently is of the opinion the conduct of the prospective adoptive mother, Mrs. Dzurian, has made her or both her and her husband unsuitable as prospective parents. However, the agency has already been served with process in the adoption proceeding and its objections can be fully presented in the court where the adoption proceeding is pending. If the agency considers it essential that custody of the child be returned to it forthwith, this too can be presented to the court in which the adoption is pending and if the court agrees, the agency can obtain the desired relief.

Either court will be guided by what is best for the welfare of the child, but it will not do to have a situation where two courts of equal rank have jurisdiction to issue orders which might conflict about the same child. Under the circumstances of this case, we think the circuit court of St. Louis county, juvenile division, exceeded its jurisdiction when it issued the order and capias requiring relators to return custody of the child to the agency and our provisional rule is therefore made absolute.

FINCH, C. J., and DONNELLY and HOLMAN, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

BARDGETT and HENLEY, JJ., dissent and concur in separate dissenting opinion of MORGAN, J.

MORGAN, Judge (dissenting).

I respectfully dissent for the same reasons set out in my dissent in State of Missouri, ex rel. Catholic Charities of St. Louis, a Missouri corporation v. Honorable Robert G. J. Hoester, Judge of the Juvenile Court of St. Louis County, No. 58144, handed down this date 494 S.W.2d 70.

The court order quoted, in part, in the first paragraph of the principal opinion, actually reads "for foster care and placement in the best available *adoptive* home . . . subject to the continuing jurisdiction of the Court." The order, as made, was specifically authorized by §§ 211.031 and 211.041, RSMo 1969, V.A.M.S.

I agree fully with the declaration made in the principal opinion that: " . . . it will not do to have a situation where two courts of equal rank have jurisdiction to issue orders which might conflict about the same child." However, I believe that the court first acting in the premises should have priority.