**In the Interest of J. D. H., a child under seventeen years of age, Petitioner,**

v.

**JUVENILE COURT OF ST. LOUIS COUNTY, Respondent.**

No. 58558.

Supreme Court of Missouri, En Banc.

April 29, 1974.

Harvey Tessler, Clayton, for petitioner.

Corinne R. Goodman, Supervising Atty., Clayton, for respondent; Gregory D. Hoffmann, Law Student Intern.

SEILER, Judge.

This is habeas corpus involving a juvenile. The question is whether the juvenile court of St. Louis County, Missouri, is unlawfully restraining him. We conclude it is not and accordingly deny relief.

The juvenile is a resident of St. Louis County. He is now between 16 and 17 years of age. On February 7, 1973, after a hearing on a supplemental petition, he was placed under the jurisdiction of the St. Louis County juvenile court. The court's order of that date made a finding of and exercised jurisdiction over the juvenile and, after providing for a six month's commitment to the Division of Mental Health and calling for reports and further

review by the court, concluded by stating "All subject to the continuing jurisdiction of the court." This order was modified on March 16, 1973 to transfer custody, with the matter of further disposition to be reviewed by the court and concluding with these words: "All subject to the continuing jurisdiction of the Court and courtesy supervision to be arranged by the Deputy Juvenile Officer."

On October 1, 1973, the juvenile allegedly abducted a woman in St. Louis County and took her car after she escaped. He was apprehended that same day in Jefferson County, Missouri while driving the car west on U.S. 66, by officers of the highway patrol, who delivered him to the juvenile officer in Jefferson County. Within a few hours the juvenile officer released him to police officers from St. Louis County, who took him from Jefferson County to the detention center of the St. Louis County juvenile court, where he has since been held under order of the St. Louis County juvenile court. There is pending before that court a supplemental petition filed January 21, 1974 by the juvenile officer of St. Louis County, alleging that the behavior, environment, and associations of the child were injurious to his welfare, by reason of the alleged offenses of October 1, 1973.

The juvenile contends that inasmuch as he was apprehended and taken into custody in Jefferson County and there delivered to the juvenile officer of that county, the juvenile court of Jefferson County obtained exclusive jurisdiction over him and therefore St. Louis County is without jurisdiction to detain him. Respondent takes the position that the juvenile court of St. Louis County, having already taken and continued jurisdiction over the child as shown by the above orders, is the only juvenile court which has exclusive, original jurisdiction over the juvenile to detain him and hear subsequent petitions filed concerning him, citing Sec. 211.041.[1]

The juvenile code, chapter 211, establishes a statewide juvenile court system for Missouri. Sec. 211.031 gives this statewide juvenile court system original jurisdiction of all juvenile proceedings under that section, to the exclusion of courts of general jurisdiction. In addition, Sec. 211.131 provides that a juvenile comes under the protective wing of the juvenile court system —that is, that the statewide juvenile court system has exclusive jurisdiction of a juvenile from the time he is taken into custody. Sec. 211.061 aids these provisions by requiring that once a juvenile is taken into custody by police he "shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him." This insures that custody of the juvenile is given to the juvenile court system, which has exclusive jurisdiction to determine proper disposition of the juvenile.

Sec. 211.041 provides: "When jurisdiction over the person of a child has been acquired by the juvenile court under the provisions of this chapter in proceedings coming within the applicable provisions of Section 211.031, the jurisdiction of the child may be retained for the purpose of this chapter until he has attained the age of twenty-one years . . ."

In the case before us, the juvenile court of St. Louis County acquired jurisdiction over the person of the juvenile by the proceedings which culminated in the order of February 7, 1973. The court retained jurisdiction in this order and retained jurisdiction in its modification order of March 16, 1973. Thus, when J. D. H. was apprehended on October 1, 1973, in Jefferson County, he was under the continuing jurisdiction of the St. Louis County juvenile court, pursuant to that court's orders and the authority of Sec. 211.041.

■ Petitioner argues that Jefferson County has exclusive jurisdiction of the juvenile because he was apprehended in that county. Petitioner relies heavily on

---

1. All statutory references are to RSMo 1969, V.A.M.S.

language in In re M. W., 504 S.W.2d 189 (Mo.App.1973), to the effect that jurisdiction vests immediately in the juvenile court of the county where the juvenile was apprehended and that jurisdiction cannot be divested by the action of the police in transporting the juvenile to another county. Counsel also cites State v. Adams, 485 S.W.2d 442 (Mo.App.1972) and In re Shaw, 449 S.W.2d ʾ80 (Mo.App.1969) to the same effect, to which could be added the decision of In re C. W., Jr., v. Murphy, 508 S.W.2d 520, decided April 9, 1974 by the Court of Appeals, St. Louis district. There is an important difference between those cases and the present case. None of the cases cited involved the situation where one juvenile court already had continuing jurisdiction over the juvenile at the time he was apprehended in another county. The language of the M. W., Adams, Shaw and C. W., Jr. cases, then, must be read in the context of the facts of those cases. In the case at bar, St. Louis County had already taken and retained jurisdiction under Sec. 211.041, which was not true of any of the cases relied on by counsel. Hence, at the time the juvenile was apprehended in Jefferson County he was under the continuing jurisdiction of St. Louis County and thus there was no jurisdiction available for Jefferson County to acquire.[2]

Petitioner says that Sec. 211.041 gives the juvenile court judge a right to retain only a very limited jurisdiction, ". . . a narrow discretion which is limited to the same subject matter or matters arising out of the same transaction . . ." Petitioner relies on several cases to support this narrow construction of Sec. 211.041, State ex rel. Dzurian v. Hoester, 494 S.W.2d 67 (Mo. banc 1973); In re Adoption of K, 417 S.W.2d 702 (Mo.App.1967); State ex rel. Grimstead v. Mueller, 361 Mo. 92, 233 S.W.2d 700 (banc 1950); and In re Sypolt's Adoption, 230 S.W.2d 877 (Mo. App.1950).[3] All of these cases involve the question of whether or not a juvenile court's continuing jurisdiction extends to include jurisdiction to hear a subsequent adoption case. These cases hold that if a juvenile court first obtains jurisdiction on the basis of neglect of the child or termination of parental rights or a parent's waiver of necessity to consent to future adoption, this jurisdiction does not continue to hear a different subject matter, namely, petition for adoption of the child. These cases do not preclude continuing jurisdiction in St. Louis County juvenile court in the case before us. Here the subsequent petition filed concerning petitioner does involve the same subject matter, i. e., subsequent acts of misconduct by the juvenile.

2. Mention should be made that in the M.W. case, supra, which was also habeas corpus, where the challenge was directed to the jurisdiction of the juvenile court of St. Louis County, there was some indication, not fully developed, that there had been a prior exercise of jurisdiction over the juvenile by the juvenile court of St. Louis City.

The opinion of the court of appeals, St. Louis district, found it unnecessary to resolve the contentions as to whether such prior exercise of jurisdiction, if such there was, vested exclusive subsequent jurisdiction in the juvenile court of the city. Under the facts of that case the juvenile admittedly was apprehended and taken into custody in the city of St. Louis at the request of St. Louis County police for implication in a robbery occurring in St. Louis County. He was released by the St. Louis police to the St. Louis County police, who took him from St. Louis to the juvenile court in St. Louis County without any order of transfer from the juvenile court of the city. The court held these circumstances precluded St. Louis County from having jurisdiction.

In the absence of any definite statement of facts in M.W. establishing a valid prior exercise of jurisdiction over the juvenile by the St. Louis City juvenile court, we do not regard the decision as being in conflict with views announced in the case at hand.

3. The Sypolt case was transferred to this court and decided in 237 S.W.2d 193 (1951). We held that the Greene County juvenile court had no jurisdiction in the adoption case, contrary to the result reached in the court of appeals decision, for the reason that the persons seeking to adopt did not reside in Greene County nor was the child in that county.

Our construction of Sec. 211.041 accords with the purpose and philosophy of the juvenile court system as expressed in Sec. 211.011 that it is the purpose of the juvenile code "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." In addition, "[t]he philosophical underpinning of the juvenile justice system is premised upon the belief that rehabilitation is more desirable than retribution, that retributive justice is less in the long-term interests of society than is corrective justice. Indeed, with respect to delinquency, it is the rhetoric of rehabilitation that serves as the sole justification for the independent existence of the juvenile justice system apart from the criminal justice system. See generally, Comment, Juvenile Court Waiver: The Questionable Validity of Existing Statutory Standards, 16 St.L.U.L.J. 604 (1972)." R. Habiger, Prosecution of Children in Missouri, 30 J.Mo.B. 11, n. 7 (1974). It should also be remembered that proceedings under the juvenile code are civil, not criminal. Thus, the emphasis of the juvenile code is on continuing care, protection and rehabilitation of the juvenile.

" . . . The Juvenile Act is rooted in the concept of *parens patriae,* that the state will supplant the natural parents when they fail in that role . . . " In re F. C., 484 S.W.2d 21, 25 (Mo.App.1972). This *parens patriae* relationship exists between the child and the juvenile court. This parental role can best be served if one juvenile court continues the supervision and rehabilitation of a juvenile in subsequent proceedings under the juvenile code.

Continuing jurisdiction by a juvenile court of subsequent juvenile proceedings also removes the possibility of conflicting court orders which arises if one court could order a juvenile to do something inconsistent with a prior order of another court of concurrent jurisdiction. As was pointed out in State ex rel. Dzurian v. Hoester, supra, 494 S.W.2d 1. c. 70, " . . . it will not do to have a situation where two courts of equal rank have jurisdiction to issue orders which might conflict about the same child . . . "

It should be noted, too, that a juvenile court is not required to retain jurisdiction under Sec. 211.041. The fact that a juvenile court once acquires jurisdiction of a juvenile in a proceeding under Sec. 211.031 does not make that jurisdiction continuing for subsequent proceedings, unless the juvenile court so orders.

While it is for the legislature, in its wisdom, to enact the laws in Missouri, we do observe that, except for the language in Sec. 211.031, about children "within the county", Missouri's juvenile code contains no venue provisions. In particular, it does not provide for venue or jurisdiction based on residence, although the code recognizes in its statement of purposes, Sec. 211.011, that the child's own home is the location of preference for the care, guidance and control he is to receive conducive to his best welfare and that of the state. Even though a juvenile may be in need of care and treatment because of acts occurring outside the county of his residence and within some other county, in most cases it will be the county of his residence where his roots will be found—parents, school, church, friends and acquaintances—and where will be the greatest interest in bringing about his rehabilitation and improvement, if it can be accomplished. The legislature might therefore want to consider amendment of the juvenile code to include a child's residence as one of the places where jurisdiction or venue can be fixed.

We observe, further, that there are no provisions in Missouri's juvenile code for transfer of a juvenile proceeding from one county to another, despite the desirability and practicality of allowing transfer of juvenile court jurisdiction, in certain circumstances, to another court within the state. Many juvenile codes in other states contain transfer provisions and the Missouri legis-

lature might well consider enacting such provisions.[4]

█ In conclusion, we mention one other matter: the Jefferson County juvenile officer in this case relinquished custody of the juvenile to police officers of St. Louis County. While we do not question his good intentions, there is no authority in the juvenile code for a juvenile officer relinquishing custody of a juvenile to anyone but the child's parents, guardian, or legal custodian, Sec. 211.141. In the absence of that sort of release, custody should have been retained in Jefferson County until the matter could be brought to the attention of the juvenile judge and by his order, custody released to the St. Louis County police for conveyance to the St. Louis County juvenile court.

However, the release of custody by the Jefferson County juvenile officer does not render the jurisdiction and custody of the juvenile by St. Louis County unlawful. St. Louis County would have exclusive continuing jurisdiction of the juvenile even if he presently remained in the custody of Jefferson County and thus returning the juvenile to Jefferson County for proper relinquishment of custody would serve no purpose.

Writ of habeas corpus denied.

DONNELLY, C. J., and BARDGETT, HENLEY and FINCH, JJ., concur.

MORGAN and HOLMAN, JJ., concur in result.

4. As an example of such a provision, see Uniform Laws Annotated, Vol. 9, Uniform Juvenile Court Act, Sec. 12, p. 412, which provides as follows:
"Sec. 12 [Transfer to Another Juvenile Court Within the State]
(a) If the child resides in a [county] of the state and the proceeding is commenced in a court of another [county], the court, on motion of a party or on its own motion made prior to final disposition, may transfer the proceeding to the county of the child's residence for further action. Like transfer may be made if the residence of the child changes pending the proceeding. The proceeding shall

be transferred if the child has been adjudicated delinquent or unruly and other proceedings involving the child are pending in the juvenile court of the [county] of his residence.
(b) Certified copies of all legal and social documents and records pertaining to the case on file with the clerk of the court shall accompany the transfer.
Commissioners' Note
This section places responsibility for care and supervision of a child with the court of the county of the child's residence. This court is usually in a better position to deal effectively with the child's welfare."