We granted certiorari in this case to answer the following questions:
1. Does a juvenile court have the authority to commit a child to the custody of the Department of Mental Health and Mental Retardation and thereafter to place the child in a private psychiatric facility and order that all costs for care and treatment be paid from State funds appropriated to the Department?
2. Did the fact that the child was in the custody of the Department of Mental Health and Mental Retardation by an order of the Juvenile Court of Houston County prohibit the Juvenile Court of Barbour County from making an adjudication regarding the child and committing the child to the Department of Youth Services?
The facts of this case are as follows:
On November 9, 1983, the Juvenile Court of Houston County adjudicated the minor, *Page 182 
anonymous, to be mentally ill, and a danger to himself and others, and committed him to the custody of the Alabama Department of Mental Health and Mental Retardation ("Mental Health"). The child was placed at Bryce Hospital in Tuscaloosa, Alabama. After treatment at Bryce, the child was placed by Mental Health into the Eufaula Adolescent Center in Barbour County, Alabama. During the time the child resided at Eufaula Adolescent Center, he escaped and allegedly committed numerous delinquent acts in Barbour County, Alabama.
On October 7, 1985, numerous petitions were filed in the Juvenile Court of Barbour County, alleging that anonymous was a delinquent child. The Juvenile Court of Barbour County adjudicated the child to be delinquent and committed him to the custody of the Alabama Department of Youth Services. He was then placed by the Juvenile Court of Barbour County in the southeast Alabama Diversion Center in Houston County, pending transfer to the Department of Youth Services.
On October 11, 1985, James A. Ward, the child's guardian ad litem, filed a motion in the Juvenile Court of Houston County, requesting an immediate hearing, alleging that the Juvenile Court of Barbour County modified the order of the Juvenile Court of Houston County, which committed the child to the custody of the Department of Mental Health. On October 18, 1985, the Juvenile Court of Houston County ordered the Department of Pensions and Security to take the child into protective custody and place him at Charter Woods Hospital, a private psychiatric facility, for an evaluation. This order followed a hearing in which the juvenile referee in Houston County determined that the order of the Juvenile Court of Barbour County was invalid on its face. The child's guardian ad litem then made a motion in the Juvenile Court of Houston County, alleging that the custody of the child was in controversy and that the Department of Mental Health was unwilling to take custody of him. Because the parties could not agree on where the child would be evaluated, and at whose expense, the Juvenile Court of Houston County ruled that the child was in the custody of the Department of Mental Health and that the Department of Mental Health was to pay any expenses incurred by him while he was in Charter Woods Hospital. Further, the court ordered the Department of Pensions and Security to exercise protective custody while the child was in Houston County, with legal custody remaining with the Department of Mental Health. Also, Charter Woods Hospital was to perform a complete evaluation of the child.
Subsequently, the Juvenile Court of Barbour County allowed the child to withdraw his earlier entered plea of guilty and change it to a plea of not guilty, and not guilty by reason of insanity to the alleged delinquent acts. By order of the Juvenile Court of Barbour County, dated November 26, 1985, the child was adjudicated a delinquent child and committed to the custody of the Alabama Department of Youth Services. By order dated December 3, 1985, the Juvenile Court of Houston County ordered that the child remain at his placement in Charter Woods Hospital pending further orders of the court.
Faced with conflicting orders, the Department of Mental Health filed a petition for a writ of prohibition with the Court of Civil Appeals, asking that the Houston County Juvenile Court be prohibited from exercising jurisdiction over the child because the Barbour County Juvenile Court had assumed jurisdiction over him. The Court of Civil Appeals denied the writ, holding that the Department of Mental Health was responsible for the costs of keeping the child at Charter Woods Hospital because there were matters pending before the Houston County Juvenile Court. The Department of Mental Health then filed the instant petition for a writ of certiorari, which we granted.
We agree with petitioner's contention that the Court of Civil Appeals erred when it said that the costs of maintaining and treating the child in a private facility could be assessed against the Department of Mental Health pursuant to Code of Alabama 1975, § 12-15-9. Section 12-15-9, including its title, is printed below: *Page 183 
 § 12-15-9. Issuance of order to parents, etc., for payment for support, treatment, etc., of children in custody of persons other than parents generally; proceedings upon failure of parents, etc., to pay amounts directed.
 Whenever legal custody of a child is vested in someone other than his parents, after due notice to the parents or other persons legally obligated to care for and support the child and after a hearing, the court may order that the parent or other legally obligated person shall pay in such manner as the court may direct a reasonable sum that will cover in whole or in part the support and treatment of the child after the order is entered and including support, treatment, costs and legal fees from the commencement of the proceeding.
 If the parent or other legally obligated person willfully fails or refuses to pay such sum, the court may proceed against him for contempt or the order may be filed and shall constitute a civil judgment. (Acts 1975, No. 1205, § 5-140.)
We are of the opinion that, when the Legislature refers to "persons" in this statute it is referring to "real" persons — people — and not hospitals or institutions. Indeed, in the very next section the legislature specifically provides for maintenance and care of children generally. Section 12-15-10 reads:
 § 12-15-10. Liability of counties for court costs, attorney's fees and expenses for maintenance and care of children generally; manner of payment.
 All expenses necessary or appropriate to the carrying out of the purposes and intent of this chapter and all expenses of maintenance and care of children that may be incurred by order of the court in carrying out the provisions and intent of this chapter, except costs paid by parents, guardians or trustees, court costs as provided by law and attorney fees shall be valid charges and preferred claims against the county and shall be paid by the county treasurer when itemized and sworn to by the creditor or other persons knowing the facts in the case and approved by the court. (Acts 1975, No. 1205, § 5-139.)
Here, the Legislature expressly designates the county as the entity responsible for maintenance and care. Therefore, according to our statutory scheme, the county, not the State or a department thereof, is responsible for any monies due Charter Woods Hospital.
The Court of Civil Appeals's judgment ordering the Department of Mental Health to pay for the child's care and treatment not only runs afoul of § 12-15-10, but also violates § 42 and 43 of the Constitution of Alabama of 1901, which sections deal with the doctrine of separation of powers.
Although the Legislature granted authority to the juvenile courts to commit children to the custody of the Department of Mental Health and authority to avail themselves of the facilities and personnel of Mental Health, the Legislature did not confer upon the juvenile courts the authority to commit a child to the custody of Mental Health and then order that the child be placed in a private psychiatric facility. See Code of Alabama 1975, § 12-15-90. Had the Legislature intended to grant authority to juvenile courts to commit a child to the custody of the Department of Mental Health and then order that the child be placed in a private psychiatric facility at the expense of Mental Health, it would have been a simple matter for the Legislature to so provide. The Legislature's power to determine the appropriations for each state agency cannot be usurped by either of the other branches of government. The Department of Mental Health is mandated by the Legislature to act, through its commissioner, "in any prudent way to provide mental health services . . . for the people of Alabama." Codeof Alabama 1975, § 22-50-1, et seq. The Department of Mental Health is therefore charged by the Legislature to accept minors alleged to be mentally ill and treat them by means of its various programs and facilities. Nowhere in any of these statutes does the Legislature state that anyone other than the Department of Mental Health is authorized to care for and treat these children. *Page 184 
Furthermore, in In re McCain, 348 So.2d 780 (Ala. 1977), this Court was presented with a situation substantially similar to the one sub judice. There, the trial court had made McCain a ward of the court, placed him in an out-of-state mental health center, and required the Alabama Department of Mental Health to pay for McCain's care and treatment. In striking down the court's order, this Court stated:
 To allow this provision of Judge Davis's order to stand would allow the unrecoverable expenditure of State funds from an appropriation not intended for child care and from which Judge Davis has no authority to direct expenditure of funds for child care.
348 So.2d at 782. The rationale behind this Court's decision inMcCain is equally sound in this case. We find no merit in the argument that the case before us is distinguishable from McCain
because of the fact that in McCain, the Court labeled as "court costs" the amount to be paid by the Department of Mental Health. Whatever their designation, costs for care and treatment of a minor placed in a private institution cannot be charged to the Department of Mental Health. Therefore, that portion of the Court of Civil Appeals' opinion that held the Department of Mental Health responsible for the child's expenses while he was in Charter Woods Hospital is erroneous and it is hereby reversed.
We now focus our attention on petitioner's second issue, namely, whether the fact that the child was in the custody of the Department of Mental Health pursuant to an order of the Houston County Juvenile Court prohibited the Barbour County Juvenile Court from adjudicating the child a delinquent and committing him to the custody of the Department of Youth Services. For the reasons that follow, we are of the opinion that the Barbour County Juvenile Court was prohibited from entering an order which conflicted with the previously entered order of the Houston County Juvenile Court.
This Court has recently denied certiorari in a case with facts almost identical to those before us in the case of Exparte Department of Mental Health Mental Retardation,491 So.2d 956 (Ala.Civ.App. 1986). In that case a juvenile, was committed to the custody of the Department of Mental Health pursuant to an order of the Houston County Juvenile Court, and was placed in the Eufaula Adolescent Center. He escaped, allegedly committed various criminal acts, and was returned to the Eufaula Adolescent Center the following day by the authorities. As a result of his activities, the Barbour County Juvenile Court adjudicated the child a delinquent and committed him to the Alabama Department of Youth Services, to be later placed in the Southeast Alabama Diversion Center. Upon motion of the Department of Mental Health, the Houston County Juvenile Court ordered that custody of the child remain with the Department pending a full hearing.
Addressing the underlying issue in the trial court's order in that similar case, the Court of Civil Appeals stated:
 It is clear that, having committed the juvenile to DMH in August 1985, the Houston County Juvenile Court retained jurisdiction of him pursuant to Ala. Code (1975), § 12-15-90(k). Under this statute, however, the Barbour County Juvenile Court had concurrent jurisdiction over the juvenile because he was placed in a facility located in Barbour County. The parties seem to agree that jurisdiction of the two courts is concurrent.
 When two courts have equal and concurrent jurisdiction, the general rule is that the court which assumed jurisdiction first has preference and should not be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction. [Citations omitted.]
. . . .
 We find that the two matters were sufficiently related for the concurrent jurisdiction principle to apply. . . . More importantly, the spirit of cooperation between courts, which is fostered by the rule, should apply in this case particularly because it is a matter involving a juvenile. Juvenile courts should not compete with each other for jurisdiction. Rather, they should cooperate so that they can determine what is in the juvenile's best interest. *Page 185 
 The determination of what is in the juvenile's best interest should always be the polestar of proceedings in the juvenile courts. We caution all such courts that, where cooperation is not maintained in areas of concurrent jurisdiction of juveniles and this polestar is not observed, this court will not hesitate to exercise its supervisory powers over these courts pursuant to Ala. Code (1975), § 12-3-11.
491 So.2d at 958, 959. We agree wholeheartedly with the above-quoted reasoning.
Another case which is substantially similar to the one before us is J.D.H. v. Juvenile Court of St. Louis County,508 S.W.2d 497 (Mo. 1974). There, the juvenile was under the jurisdiction of the St. Louis County Juvenile Court, and was committed to the Division of Mental Health; he later abducted a woman, stole her car, and was apprehended by the Jefferson County authorities. The juvenile was returned to St. Louis County, but he argued that he should have remained in the jurisdiction of the Jefferson County Juvenile Court. In holding that the juvenile was under the jurisdiction of the first court to acquire it, the Missouri Supreme Court stated:
 ". . . The Juvenile Act is rooted in the concept of parens patriae, that the state will supplant the natural parents when they fail in that role. . . ." In re F.C., 484 S.W.2d 21, 25 (Mo.App. 1972). This parens patriae relationship exists between the child and the juvenile court. This parental role can best be served if one juvenile court continues the supervision and rehabilitation of a juvenile in subsequent proceedings under the juvenile code.
 Continuing jurisdiction by a juvenile court of subsequent juvenile proceedings also removes the possibility of conflicting court orders which arises if one court could order a juvenile to do something inconsistent with a prior order of another court of concurrent jurisdiction. As was pointed out in State ex rel. Dzurian v. Hoester, [494 S.W.2d 67 (Mo. banc 1973] ". . . it will not do to have a situation where two courts of equal rank have jurisdiction to issue orders which might conflict about the same child. . . ."
 It should be noted, too, that a juvenile court is not required to retain jurisdiction under Sec. 211.041. The fact that a juvenile court once acquires jurisdiction of a juvenile in a proceeding under Sec. 211.031 does not make that jurisdiction continuing for subsequent proceedings, unless the juvenile court so orders.
508 S.W.2d at 500.
In another case involving conflicting orders of courts with concurrent jurisdiction, In Re William T., 172 Cal.App.3d 790,218 Cal.Rptr. 420 (1985), the court found that "concurrent jurisdiction does not make the jurisdiction co-equal," and upheld the juvenile court's order which conflicted with a superior court's order. Although the facts are somewhat different in this case from those previously cited, the California court's statement, that concurrent jurisdiction does not mean co-equal jurisdiction, is one that should be applied in the present case and ones like it.
As the Court of Civil Appeals stated in Ex parte Departmentof Mental Health Mental Retardation, supra, the primary concern in all of these cases is the juvenile's best interests, and courts should cooperate to ensure that these interests are not taken for granted. It is therefore the holding of this Court that where juvenile courts have concurrent jurisdiction, the court which exercised its jurisdiction first shall not have its orders contradicted by another juvenile court. Thus, that portion of the Court of Civil Appeals' opinion that held that the Barbour County Juvenile Court should have yielded to the continuing jurisdiction of the Houston County Juvenile Court is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, SHORES, BEATTY, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., not sitting. *Page 186