548 So.2d 419 (1989)
Robert CHILDREE, in his capacity as Comptroller of the State of Alabama
v.
HEALTH CARE AUTHORITY OF the CITY OF HUNTSVILLE, d/b/a Huntsville Hospital.
ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
v.
HEALTH CARE AUTHORITY OF the CITY OF HUNTSVILLE, d/b/a Huntsville Hospital.
87-822, 87-828.
Supreme Court of Alabama.
April 7, 1989.
Rehearing Denied July 28, 1989.
Opinion Dissenting from Denial of Rehearing July 28, 1989.
Fournier J. Gale III, and Maibeth J. Porter of Maynard, Cooper, Frierson & Gale, Birmingham, for appellant Robert Childree.
G.R. Trawick and E.J. McArthur, Montgomery, for appellant James William McFarland, Commissioner for the Alabama Dept. of Mental Health and Mental Retardation.
James P. Smith and Raymond D. Waldrop, Jr. of Smith and Waldrop, Julian D. Butler of Sirote, Permutt, McDermott, Slepian, Friend, Friedman, Held & Apolinsky, Huntsville, for appellees Madison County, Ala., and Frank Riddick, Probate Judge of Madison County, Alabama.
James W. Webb and William B. Alverson, Jr. of Webb, Crumpton, McGregor, Sasser, Davis & Alley, Montgomery, for amicus curiae The Ass'n of County Commissions of Alabama.
PER CURIAM.
The State comptroller and the State Department of Mental Health appeal the judgment of the Madison County Circuit Court holding the State and the Department financially responsible for the care of indigent citizens of Madison County who are subject to involuntary commitment proceedings. We reverse.
In early 1982, Madison County began placing indigents in Huntsville Hospital for treatment and custodial care. Between February 1982 and August 1984, the probate judge billed the State of Alabama's general fund on behalf of the hospital for more than $400,000 for care and treatment *420 of indigents. The costs were paid by the State from a line item in the general fund appropriations entitled "court costs not otherwise provided for." Once payment was received, the probate judge forwarded it to the hospital.
In August 1984, the State ceased paying these billswhich at that time are alleged to have exceeded more than half the total yearly court costs budgeted for all counties. Prior to the filing of this action, Madison County was the only county submitting such charges and having them paid.[1] The State seeks to recover all amounts paid to Madison County, which it alleges were mistakenly paid. After August 1984, when State funds were no longer forthcoming, Madison County continued (and it continues) to refer indigents to the hospital, where Madison County has incurred $700,000 in unpaid medical bills. Both Madison County and the hospital seek payment of these bills by the State and an injunction forcing the State to continue payments.
The dispositive issue in this case is which of three entitiesthe State of Alabama, the Department of Mental Health, or Madison Countyis financially responsible for the costs incurred in the pre-commitment care and treatment of indigent Madison County citizens who have been committed to the custody of the Department of Mental Health.
The Comptroller argues that the State can never be liable for costs or fees unless they are expressly approved by the Legislature and that the Legislature did not approve payment by the State of any costs associated with Code of Alabama 1975, § 22-52-14, which provides as follows:
"In any commitment proceeding, the fees of any attorney appointed by the probate judge to act as advocate for the petition and any attorney or guardian ad litem appointed by the probate judge for the person sought to be committed shall be set at the rates established by section 15-12-21; and any expert employed to offer expert testimony, in such amounts as found to be reasonable by the probate judge; and all other costs allowable by law shall be paid by the state general fund upon order of the probate judge...."
He further argues that § 22-52-14 must be read in pari materia with the Health Care Responsibility Act, Code 1975, § 22-21-290 et seq.specifically § 22-21-291, which reads as follows:
"It is the intent of the legislature to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides for all those costs not fully reimbursed by other governmental programs or third-party payers."
Because of this wording, one must conclude that such health care costs were not contemplated by the Legislature as being payable from the State's general fund and that had the Legislature intended the general fund to pay these costs, it would have expressly excepted them from the mandate of § 22-21-291. The Comptroller concludes that the Health Care Responsibility Act and the Alabama Constitution of 1901, Art. IV, § 88, require Madison County to bear the burden of paying expenses incurred in the care of its indigent citizens.
The Commissioner of the Alabama Department of Mental Health and Mental Retardation argues that Ala.Const.1901, Art. I, § 14, creates immunity for him as Commissioner, under the doctrine of sovereign immunity. He argues that the Probate Court of Madison County exceeded its authority by referring indigents to the hospital because, he argues, the Legislature did not confer upon the probate court the authority to commit a person to the Department of Mental Health and order that person placed in a facility such as a hospital pending acceptance by the Department of Mental Health of the costs imposed by Code of Alabama 1975, §§ 22-50-1 et seq. The Commissioner finally argues that he is required by statute to retain control over, and to be responsible for, the operation and the expenditures of the Department of Mental Health; and that Ex parte Department *421 of Mental Health, 511 So.2d 181 (Ala.1987), is the controlling precedent in this case. In Ex parte Department of Mental Health, we held the individuals and their families responsible for the costs of the care of persons committed by the courts to the custody of the Department of Mental Health who thereafter were placed in private psychiatric care and we held that ordering the Department of Mental Health to pay for such care violated Ala.Const. 1901, Art. III, §§ 42 and 43.
The position of Huntsville Hospital is that § 22-52-14 mandates that the general fund pay all expenses ordered by a probate judge under the "all other costs allowable by law" language of the statute, and that the Comptroller's assertion that § 22-21-291 requires counties to pay these costs rather than the State is fallacious. The hospital argues that a county is responsible only when an indigent non-resident is ordered treated in an out-of-county hospital, and it cites § 22-21-293 as its authority, and it points out that this is not such a case. The hospital reasons that the Alabama Constitution does not prevent the construction of the § 22-52-14 language to include hospital bills incurred as part of the commitment process and that there is a complete absence of statutory authority requiring a county to be responsible for the payment of such hospital bills.
The hospital further points out that the Department of Mental Health refused the probate judge's request that it take custody of indigents promptly after commitment proceedings, and that counties cannot confine committed persons to jail even temporarily without violating their rights, Lynch v. Baxley, 744 F.2d 1452 (11th Cir.1984). The hospital counters the Commissioner's argument regarding sovereign immunity by arguing the exception that if a state official fails to pay money under a mistaken interpretation of law, an injunction may be granted ordering the official to issue a warrant for the money sought to be paid. The exception, it says, should apply in this case. The hospital finally maintains, in response to the Comptroller's argument regarding retaxation, that to retax the costs in this case would not be too difficult or impractical in light of Code of Alabama 1975, § 41-4-61, which gives the Comptroller of the State the authority to require information "on oath, to be administered by him, from any person, touching any claim or account he is required to audit"; therefore, it says, a method of reclaiming the costs already paid has been established and a claim through the Madison County Circuit Court is unnecessary.
Our holding in Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987), compels us to conclude that the ultimate financial responsibility for the treatment offered by Huntsville Hospital rests with Madison County. We held in Department of Mental Health, supra, that the costs of private care of a person in the custody of the Department of Mental Health must be assessed against that person or his/her family, or, in the alternative, the county. In the instant case, these persons are financially incapable of defraying the costs involved for care and treatment. Ala.Const. 1901, Art. IV, § 88, states that "[i]t shall be the duty of the legislature to require the several counties of this state to make adequate provision for the maintenance of the poor"; this places on Madison County the duty of caring for its indigent citizens. We agree with the Comptroller's argument that had the Legislature intended for the State general fund to be responsible for these costs, it would have specifically stated so in Code of Alabama 1975, § 22-21-291 (the Health Care Responsibility Act), and that the private psychiatric treatment of indigent persons awaiting acceptance at a Department of Mental Health facility is not one of the costs contemplated in the "and all other costs allowable by law shall be paid by the state general fund upon order of the probate judge" language of § 22-52-14.
We further hold that the State may not recover the sums mistakenly paid to Madison County. Although estoppels against the State are not favored, Capital Transport Co. v. Alabama Public Service Commission, 268 Ala. 416, 108 So.2d 156 (1959), the doctrine of equitable estoppel is applicable to the government where justice and fair play require it, Ex parte Department *422 of Human Resources, 548 So.2d 176 (Ala.1988); Ex parte Four Seasons, Ltd., 450 So.2d 110 (Ala.1984); Marsh v. Birmingham Board of Education, 349 So.2d 34 (Ala.1977). A governmental agency may be equitably estopped
"where the necessary elements or grounds of estoppel are present, as where an inconsistent position has been assumed, or where the governmental body or agency has induced or permitted improvements or expenditures on the strength of its express or implied representations." (Footnotes omitted.)
31 C.J.S. Estoppel, § 138 (1969). We are of the opinion that both elements have been established in this case. First, it cannot be rationally argued that the State has not, here, assumed an inconsistent position, because it reimbursed Madison County for its expenses for two years prior to the prosecution of this lawsuit to recover those amounts paid. Furthermore, the argument that reimbursement by the State, in this case, did not induce Madison County to continue its program of housing its indigent citizens committed to the custody of the Department of Mental Health is unpersuasive when the testimony that Madison County, prior to the institution of the reimbursement program, requested that the Department of Mental Health assume custody of these persons as expeditiously as possible is considered. Therefore, the State is equitably estopped from recovering all sums paid to Madison County pursuant to this reimbursement plan. As to the bills incurred after suit was filed, we hold that Madison County must pay these bills because at that time it should have been clear to Madison County that the State had taken the position that it did not owe these bills.
For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX, J., dissents.
HORNSBY, C.J., and STEAGALL, J., recused.
KENNEDY, J., not sitting.
MADDOX, Justice (dissenting).
I must respectfully dissent from the majority's holding that the county, and not the State, is responsible for the costs incurred in the care and treatment of indigents who have been committed to the custody of the Department of Mental Health.
The majority relies upon Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987), which held that the costs of private care of juveniles in the custody of the Department must be assessed against the county if the individual or his family could not pay those costs. Reliance upon that case is misplaced.
That case dealt with a juvenile committed to the Department of Mental Health, not with an adult, as is the case here. In my opinion, that makes a tremendous difference, because the Legislature has specifically provided for different procedures when dealing with juveniles, a fact, I believe that the majority does not realize, and consequently does not address.
The procedures for the involuntary commitment of adults is set forth in Ala.Code 1975, § 22-52-1 et seq., and it is plain that the Legislature intended to set up different procedures for the commitment of adults and minors or children, because § 22-52-16 specifically provides that "[t]he provisions of this article ["Commitment, Discharge and Transfer of Persons in State Institutions"] shall not apply to commitment to the custody of the state department of mental health of mentally ill minors or children." (Emphasis added.)
Ex parte Department of Mental Health, held that Ala.Code 1975, § 12-15-10, specifically made the county responsible for "all expenses of maintenance and care of children" that could not be paid for by the family. This case, on the other hand, deals with the commitment of mentally ill adults; thus, § 12-15-10 does not apply here. The statutes dealing with the commitment of adults, in fact, specifically exclude application to mentally ill minors or children. § 22-52-16, quoted supra. An adult committed to the Department is the State's responsibility. The statutory scheme is clear. Section 22-52-6 requires that the *423 Department be notified when a commitment petition is filed, and § 22-52-10 provides that when a person is committed, the probate judge shall order "the person committed to the custody of the Alabama state department of mental health." There are no provisions similar to those dealing with minors and children.[1]
It is undisputed that if the Department had taken physical custody of these persons immediately after the commitment proceedings, then the Department would be responsible for the costs of maintaining and caring for these persons. Yet, in this case, the Department refused to take physical custody promptly after the commitment proceedings. Under the majority's analysis, the Department can effectively transfer to the county the responsibility of paying for the care of persons committed to the Department by merely refusing to take physical custody of them immediately after the commitment proceeding. That should not be. What is a probate judge to do when the Department refuses to take a person lawfully committed? He could not send the committed persons to the jail; Lynch v. Baxley, 744 F.2d 1452 (11th Cir.1984), forbids that practice. He has few options, and when the Department refused custody because of a lack of available beds, the judge had little choice but to place these persons in a facility such as Huntsville Hospital.
It is tragic that the State does not have adequate facilities and beds available to handle the needs of the mentally ill, but such a lack of resources should not allow the Department to shift the financial burden of caring for these persons onto the counties of this state. The responsibility for the care and treatment of persons involuntarily committed to the custody of the Department belongs with the State of Alabama.
It is common knowledge that the Department of Mental Health embarked on a program of building additional facilities and upgrading those it already had, all designed to meet the Lynch v. Baxley guidelines.[2] It is possible that the Department of Mental Health, like the Department of Corrections, has too few beds and inadequate funds to house and treat persons properly committed to its custody,[3] but if the Department's funding and facilities are inadequate, then that is a matter that addresses itself to the legislative branch of government. While the Legislature could constitutionally require counties to pay for indigent mental patients housed in private facilities, it has not done so.
I can find no statutory requirement that a county assume the expense of the care and maintenance of mentally ill adults who have been committed to the custody of the Department of Mental Health. The majority, relying upon § 22-21-291 as the statutory authorization, fails to appreciate the fact that § 22-21-291 applies to indigent adults who have not been committed to the Department of Mental Health, not to those who have been committed. The state paid some of these bills in the past. That is the proper procedure. Section 22-52-14 is broad enough, especially in view of the requirements of Lynch v. Baxley, to authorize the probate judge to incur costs such as were incurred in this case and to bill the general fund when the person committed is indigent. That section provides, in pertinent part: "In any commitment proceeding, the fees [of attorneys and expert witnesses]... and all other costs allowable by law shall be paid by the state general fund upon order of the probate judge...."
The majority opinion, in my judgment, changes the statutory scheme set up to defray the reasonable and ordinary costs of the care and maintenance of mentally ill *424 adults who are committed to the Department of Mental Health, but who cannot be accepted by that Department, and because of that fact, I must dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
The application for rehearing is overruled.
APPLICATION OVERRULED.
JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ.
MADDOX, J., dissents.
HORNSBY, C.J., and STEAGALL, J., recused.
KENNEDY, J., not sitting.
MADDOX, Justice (dissenting).
On application for rehearing, appellees Madison County and Frank Riddick, Probate Judge of Madison County, ask this Court to grant rehearing for the following reasons:
"Appellees Madison County, Alabama, and Frank Riddick, Probate Judge of Madison County, Alabama, respectfully apply to this Court for a rehearing of its opinion of April 7, 1989, reversing ... the judgment of the Trial Court. These appellees respectfully urge to this Court that rehearing should be granted for the following reasons:
"1. This Court misperceived the primary reason for the patients for whom payment is sought, being placed into Huntsville Hospital.
"2. This Court made no distinction between the costs for subjects of involuntary commitment proceedings placed into Huntsville Hospital for evaluation prior to commitment and the expenses for subjects of involuntary commitment proceedings placed into Huntsville Hospital following commitment while awaiting an available bed at a facility of the State Department of Mental Health and Mental Retardation. The distinction between these two groups is significant both legally and factually.
"3. The Probate Court in commitment matters is a court of general jurisdiction and neither the Comptroller nor the State Department of Mental Health and Mental Retardation can ignore the orders of the Probate Court.
"4. Alabama State Law places upon the State of Alabama solely the financial responsibility for the commitment of and the treatment of its mentally ill adult citizens.
"5. There is no statutory or other authority for placing upon a county governing body costs connected with the commitment of mentally ill adults or the cost of treatment of mentally ill adults after they have been committed to the custody of the Department of Mental Health and Mental Retardation.
"6. The Alabama Health Care Responsibility Act expressly does not apply to treatment of the mentally ill.
"7. The facts and applicable law in this case are clearly distinguishable from Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987)."
I am of the opinion that rehearing should be granted for one or all of the above-stated reasons; therefore, I must respectfully dissent.
NOTES
[1] Houston County's probate judge had sent a similar bill to the State that was rejected.
[1] The Legislature has specifically provided, in the case of minors or children, that the Department of Mental Health must notify the district court whether facilities are available in state facilities. The law provides that "[n]o person shall be accepted if the facility does not have adequate facilities available or if acceptance would result in an overcrowded situation." § 12-15-90(d)(3).
[2] The legislature has enacted and re-enacted legislation governing the procedure for the involuntary commitment of persons to the custody of the Department. Acts 1975, No. 1226; and Acts 1977, No. 670 (now codified as Ala.Code 1975, § 22-52-1 et seq.).
[3] It should be noted that funds for Department of Mental Health facilities cannot be prorated. See § 22-50-15.