601 So.2d 459 (1992)
HEALTH CARE AUTHORITY OF the CITY OF HUNTSVILLE, d/b/a Huntsville Hospital
v.
MADISON COUNTY, et al.
1901638.
Supreme Court of Alabama.
May 22, 1992.
Rehearing Denied July 10, 1992.
*460 James P. Smith and Raymond D. Waldrop, Jr. of Smith & Waldrop, Huntsville, for appellant.
Julian D. Butler of Sirote & Permutt, P.C., Huntsville, for appellees.
PER CURIAM.
This case is before this Court for the second time. The background of this case is set out in Childree v. Health Care Authority of the City of Huntsville, 548 So.2d 419 (Ala.1989). The issue in Childree was whether the State of Alabama, the Department of Mental Health, or Madison County was responsible for paying $700,000 in costs incurred by Huntsville Hospital for the pre-commitment care and treatment of indigent Madison County citizens who had been involuntarily committed to the custody of the Department of Mental Health.
The history of this case is as follows:
"In early 1982, Madison County began placing indigents in Huntsville Hospital for treatment and custodial care. Between February 1982 and August 1984, the probate judge billed the State of Alabama's general fund on behalf of the hospital for more than $400,000 for care and treatment of indigents. The costs were paid by the State from a line item in the general fund appropriations entitled `court costs not otherwise provided for.' Once payment was received, the probate judge forwarded it to the hospital.
"In August 1984, the State ceased paying these billswhich at that time are alleged to have exceeded more than half the total yearly court costs budgeted for all counties. Prior to the filing of this action, Madison County was the only county submitting such charges and having them paid. The State seeks to recover all amounts paid to Madison County, which it alleges were mistakenly paid. After August 1984, when State funds were no longer forthcoming, Madison County continued (and it continues) to refer indigents to the hospital, where Madison County has incurred $700,000 in unpaid medical bills. Both Madison County and the hospital seek payment of these bills by the State and an injunction forcing the State to continue payments."
Childree, 548 So.2d at 419-20.
The trial court held that the State was required to pay the costs. We reversed and held that the financial responsibility for the costs was on Madison County, stating:
"Our holding in Ex parte Department of Mental Health, 511 So.2d 181 (Ala. 1987), compels us to conclude that the ultimate financial responsibility for the treatment offered by Huntsville Hospital rests with Madison County. We held in Department of Mental Health, supra, that the costs of private care of a person in the custody of the Department of Mental Health must be assessed against that person or his/her family, or, in the alternative, the county. In the instant case, these persons are financially incapable of defraying the costs involved for care and treatment. Ala. Const. 1901, Art. IV, § 88 states that `[i]t shall be the duty of the legislature to require the several counties of this state to make adequate provision for the maintenance of the poor'; this places on Madison County the duty of caring for its indigent citizens. We agree with the ... argument that had the Legislature intended for the State general fund to be responsible for these costs [the costs of caring for indigent, mentally ill persons that are involuntarily committed], it would have specifically stated so in Code of Alabama 1975, § 22-21-291 (the Health Care Responsibility Act) and that the private psychiatric treatment of indigent persons awaiting acceptance at a Department of Mental Health facility is not one of the costs contemplated in the `and all other costs allowable by law shall be paid by the state general fund upon order of the probate judge' language of § 22-52-14."
Childree, 548 So.2d at 421.
We reversed and remanded the case to the trial court. On remand, the Health *461 Care Authority of the City of Huntsville, d/b/a Huntsville Hospital (the "Hospital") submitted bills, including interest, for $1,075,527.34 in psychiatric patient care for involuntarily committed indigent citizens. The Hospital filed a motion to strike the County's answer of November 15, 1989. The facts regarding the motion to strike are as follows: Madison County on November 20, 1986, filed a motion to dismiss the Hospital's complaint. That motion was overruled on December 2, 1986, and the County was allowed 20 days to file an answer. However, it did not do so until almost three years later, on November 15, 1989. The County's belated answer raised, for the first time, the Hospital's failure to comply with the Alabama statutory requirements regarding claims against counties. In ruling upon the Hospital's motion to strike, the trial court stated:
"By this Court's order of December 2, 1986, the defendants [the County] were required to answer the plaintiff's complaint by December 22, 1986. No answer was filed. If an answer containing the affirmative defense of noncompliance with the county statutes of nonclaims had been timely filed, all medical bills for which the plaintiff sought payment which were not already barred could have been salvaged by amending plaintiff's claim to the County. Because defendants failed to assert this affirmative defense in a timely manner, plaintiff was not put on notice with regard to defendants' objections, and therefore, sought neither to cure existing deficiencies nor to handle future claims in a different manner. Consequently, plaintiff's claims which would not have been barred on December 22, 1986 (when defendants' answer was due) have been actually prejudiced by defendants' failure to timely answer, and, subsequent attempt to assert the affirmative defense of noncompliance with the county statute of nonclaims.
"However, the claims at issue in this proceeding began to accrue in 1982. Therefore, many of these claims were barred on December 22, 1986, when defendants' answer was due. Consequently, defendants' delay in answering did not prejudice plaintiff's claims which already would have been barred on December 22, 1986.
"Accordingly, it is ordered, adjudged, and decreed that: (a) with respect to all claims by plaintiff which would not have been barred on December 22, 1986, plaintiff's motion to strike defendants' answer... is hereby granted; however, (b) with respect to all claims by plaintiff which already would have been barred on December 22, 1986, plaintiff's motion to strike defendants' answer ... is overruled and denied."
The trial court determined that the amount the Hospital could recover was limited by the Alabama Health Care Responsibility Act. The trial court held that the failure to file certain itemized claims barred the Hospital from recovery on those claims. Also, the trial court held that no prejudgment interest was owed to the Hospital. On June 12, 1991, the trial court entered a final judgment in favor of the Hospital in the amount of $551,218.21.
First, the Hospital argues that the trial court erred in computing the sums due to it by limiting the hospital's recovery to that specified in the Alabama Health Care Responsibility Act ("AHCRA") rather than the Hospital's actual charges. The Hospital contends that the parties had stipulated to the amount actually incurred as reasonable and necessary costs and contends that the County should pay that amount. Second, the Hospital argues that the trial court erred in determining that the hospital's failure to file certain itemized claims with Madison County pursuant to § 6-5-20 and § 11-12-5 barred recovery on a substantial portion of all of the accounts. Third, the Hospital argues that the trial court erred in failing to assess any prejudgment interest on the accounts.
The Hospital contends that this Court construed § 22-52-14, Ala.Code 1975 (the statute dealing with the payment of costs in civil commitment proceedings), in pari materia with § 22-21-291, Ala.Code 1975, part of the AHCRA, to determine that Madison County was responsible for *462 the costs of involuntarily committed, indigent Madison County citizens. The Hospital argues that only § 22-21-291 applies and that the remaining sections of the AHCRA, including those sections limiting the amount the Hospital can recover, do not apply. Section 22-52-14 provides, in pertinent part, as follows: "In any commitment proceeding, ... all other costs allowable by law shall be paid by the state general fund upon order of the probate judge...."
Section 22-21-291 provides as follows:
"It is the intent of the legislature to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides for all those costs not fully reimbursed by other governmental programs or third-party payers."
The hospital argues that the remaining sections of the AHCRA do not apply and, more specifically, that the sections limiting the amounts that may be recovered by the hospital do not apply.
Nowhere in Childree did this Court state that only § 22-21-291 was to be read in pari materia with the involuntary commitment statutes. All of the sections of the AHCRA are applicable to the Hospital, including the portions limiting the Hospital's recovery.
The second issue raised by the Hospital is whether the trial court erred in determining that the Hospital's failure to comply with § 6-5-20 and § 11-12-5, Ala. Code 1975, barred recovery on a substantial portion of the accounts. The Hospital filed three claims with the County, the first on December 15, 1986, the second on May 9, 1989, and the third on July 10, 1990. Thereafter, the Hospital submitted a separate claim to the county as each new commitment patient was discharged.
The requirements that must be met in order to sue a county are set out in §§ 6-5-20, 11-12-5, 11-12-6, and 11-12-8. Those sections require presentment of an itemized, verified claim to the county commission within 12 months of the accrual of the claim, and action on the claim within 90 days. The trial court in this case determined that only the May 9, 1989, and July 10, 1990, claims contained any information concerning the basis for the amount claimed by the Hospital. Both of those claims contained patient names, discharge dates, and the charges for each patient. However, the December 15, 1986, claim presented only an aggregate amount owed to the Hospital by the County. Because of the failure to file itemized claims, many of the individual patient bills were not presented to the County until more than a year after the patient had been discharged. Therefore, the Hospital was barred from recovering certain amounts because of its failure to comply with the statutory requirements regarding claims against counties. The trial court properly barred the Hospital's untimely claims.
The third issue concerns prejudgment interest claimed by the Hospital. The trial court held that the accounts submitted by the Hospital were open accounts, which normally bear interest. However, the trial court determined that the Hospital's claim was not certain, in that neither the individual accounts for which the Hospital could recover, nor the exact amount recoverable for those claims allowed, was "certain" until the trial court's final judgment.
Section 8-8-8, Ala.Code 1975, provides:
"All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."
This Court has said of this statute:
"This statute has been interpreted to mean that `in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery.' C. Gamble, Alabama Law of Damages, § 8-3 (2d ed. 1988); citing Tennessee Coal, Iron & R. Co. v. Jourdan, 221 Ala. 106, 128 So. 132 (1930); Jefferson County v. City of Birmingham, 235 Ala. 199, 178 So. 226 (1938); *463 Roe v. Baggett Transportation Co., 326 F.2d 298 (5th Cir.1963); and Belcher v. Birmingham Trust Nat'l Bank, 488 F.2d 474 (5th Cir.1973). And `[a]ll liquidated demands for a sum certain, fixed by agreement or otherwise, bear interest from the time the party becomes liable and bound to pay them.' C. Gamble, supra, § 8-7; citing Ala.Code 1975, § 8-8-8."
Miller & Co. v. McCown, 531 So.2d 888, 889 (Ala.1988).
The amount owed to the Hospital was uncertain. The Hospital filed no itemized claim until May 9, 1989. The amount due was not certain until the Hospital filed an itemized claim. Therefore, the sum in question did not become certain until the trial court's final judgment after the remand from this Court. Generally, prejudgment interest is not awarded unless a sum is certain or is capable of being made certain. Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105 (Ala.1983).
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
ALMON, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
MADDOX, HOUSTON and KENNEDY, JJ., dissent.
KENNEDY, Justice (dissenting).
I do not agree with the majority's holding in Childree v. Health Care Authority of the City of Huntsville, 548 So.2d 419 (Ala.1989), that the County was financially responsible for the precommitment care and treatment of involuntarily committed indigent citizens.
This Court's reliance on Ex parte Department of Mental Health, 511 So.2d 181 (Ala.1987), is misplaced. The decision in Department of Mental Health was based upon § 12-15-10, Ala.Code 1975, which deals with indigent juveniles subjected to civil commitment proceedings, and it is not pertinent to the facts of this case. The statute dealing with adults who are involuntarily committed expressly states that "all other costs allowable by law shall be paid by the state general fund." § 22-52-14.
A review of the legislative history of § 22-52-14 shows that the original draft of Senate Bill 696 provided that the costs for indigent adults involuntarily committed would be paid by the county governing body. Later, the phrase "county governing body" was replaced with "state general fund." Clearly, the legislature intended for the State to be responsible for the costs of indigent adults who are involuntarily committed.
In Childree, the Court stated that "had the Legislature intended for the State general fund to be responsible for these costs, it would have specifically stated so in Code of Alabama 1975, § 22-21-291 (the Health Care Responsibility Act)."
Section 22-21-291 was enacted in 1979. Section 22-52-14, dealing with the payment of costs in adult civil commitment proceedings from the State general fund, was last amended in 1984five years after the Health Care Responsibility Act was enacted. Indeed, if the Legislature had intended for the County to be financially responsible for indigent adults who are committed, it would have expressly stated so in § 22-52-14 in 1984. "[I]n cases of conflicting statutes on the same subject, the latest expression of the legislature is the law." Baldwin County v. Jenkins, 494 So.2d 584, 588 (Ala.1986).
The Court in Childree failed to mention § 22-52-17, which deals with the requirement that the Department of Mental Health perform mental evaluations on a person sought to be committed. Only in emergency situations, when the Department of Mental Health is not available, may a public facility be required to perform a mental evaluation. Thus, the Hospital is suing to recover its costs of performing duties expressly delegated by the Legislature to the State Department of Mental Health. Based on implied contract principles, the State should be responsible for paying the costs incurred by the Hospital. "[W]here one knowingly accepts services rendered by another, and the benefit *464 and result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered." Hendrix, Mohr & Yardly, Inc. v. City of Daphne, 359 So.2d 792, 795 (Ala.1978).
MADDOX and HOUSTON, JJ., concur.