On Application for Rehearing

YATES, Judge.
The opinion of February 25, 2000, is withdrawn, and the following is substituted therefor.
The University of South Alabama d/b/a University of South Alabama Medical Center Hospital (hereinafter “USAMC”) appeals from a summary judgment in favor of Escambia County. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A summary judgment is appropriate only when the moving party shows “that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P. Once the moving party has *338 made a prima facie showing that there is no genuine issue of material fact, the non-moving party must rebut that showing by presenting “substantial evidence” creating a genuine issue of material fact. § 12-21-12, Ala.Code 1975; Hope v. Brannan, 557 So.2d 1208 (Ala.1989). In determining whether the evidence creates a genuine issue of material fact, a court will view the evidence in a light most favorable to the nonmoving party. King v. Winn-Dixie of Montgomery, Inc., 565 So.2d 12 (Ala.1990); see also Dorman v. Jackson, 623 So.2d 1056 (Ala.1993).
The issue is whether USAMC is entitled to recover from Escambia County the costs of medical care provided for three indigent inmates who were incarcerated in Escambia County.
On December 1, 1983, USAMC, which is located in Mobile County, entered into an agreement with Escambia County whereby the County agreed to do certain affirmative acts for the benefit of USAMC, including voting for USAMC to retain the contract to provide emergency medical services for Escambia County, in exchange for USAMC’s not filing claims or lawsuits against Escambia County under the Health Care Responsibility Act, § 22-21-290 et seq., Ala.Code 1975, to recover costs of caring for “indigent patients” residing in Escambia County. The agreement was drafted by an attorney for USAMC.
On November 23, 1994, Jessie Boutwell, an indigent inmate at the Escambia County jail, was admitted to USAMC for treatment. Boutwell was discharged on December 3, 1994, after incurring charges totaling $40,973.97. On May 15, 1996, No-riyuki Hill, another indigent inmate at the Escambia County jail, was admitted to US-AMC for treatment. Hill was released on May 20, 1996, after incurring charges of $6,119. On July 29, 1996, Winston L. McNabb, another indigent inmate at the Escambia County jail, was admitted to US-AMC for treatment. McNabb died in the hospital on August 14, 1996, after incurring charges of $134,116.
USAMC sued Escambia County, Bout-well, Hill, and McNabb’s estate, seeking payment of the inmates’ hospital bills. In its complaint, USAMC alleged that Bout-well, Hill, and McNabb were unable to pay all or a portion of the medical costs and that Escambia County was legally responsible under § 14-6-19, Ala.Code 1975, which provides that a county is responsible for medical expenses for indigent inmates incarcerated in that county. USAMC contended in its complaint that the County’s liability arose solely under § 14-6-19, and that the 1983 agreement is limited to claims brought under the Health Care Responsibility Act.
Escambia County moved for a summary judgment, which the court granted. The trial court entered a Rule 54(b), Ala. R. Civ. P., order certifying the summary judgment as final. At that time, both Boutwell and McNabb were deceased.
The trial court held that § 14-6-19 must be read in pari materia with § 22-21-293, a part of the Health Care Responsibility Act; that section provides that the financial responsibility for indigent patients falls on the county of residence of the indigent. The court based its decision on Health Care Authority of the City of Huntsville v. Madison County, 601 So.2d 459 (Ala.1992). The court further held that USAMC was barred from any recovery against Escambia County because of the 1983 contract.
Section 14-6-19 provides:
“Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medi *339 cines and medical attention to those who are sick or injured, when they are unable to provide them for themselves.”
It was the intent of the legislature in passing the Health Care Responsibility Act “to place the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides, for all those costs not fully reimbursed by other governmental programs or third-party payers.” § 22-21-291. Section 22-21-293 of the Act applies to out-of-county indigents treated at a regional hospital and provides, in pertinent part:
“Ultimate financial responsibility for treatment received at a regional referral hospital by a certified indigent patient, who is a resident of the State of Alabama but is not a resident of the county in which the regional referral hospital is located, shall be the obligation of the county of which the certified indigent patient is a resident. A county’s annual financial responsibility for each of its resident certified indigent patients receiving treatment at a regional referral hospital shall be limited to payment for 30 days or the number of days of services allowed per annum for the care of Medicaid patients through the State Medicaid Program at the time of the patient’s hospitalization, whichever shall be less, at the per diem reimbursement rate currently in effect for the regional referral hospital under the Medical Assistance Program for the Needy under Title XIX of the Social Security Act, as amended.”
In Childree v. Health Care Authority of the City of Huntsville, 548 So.2d 419 (Ala.1989), the dispositive issue was which of three entities — the State of Alabama, the Department of Mental Health, or Madison County — was financially responsible for the costs incurred in the precommitment care and treatment of indigent Madison County citizens who had been involuntarily committed to the custody of the Department of Mental Health. The supreme court held that the County was responsible for the costs. The supreme court read § 22-52-14, the statute dealing with the payment of costs in civil commitment hearings, in pari materia with § 22-21-291, part of the Health Care Responsibility Act, in determining that the County was responsible for the costs of involuntarily committed indigent county citizens. On remand, the hospital submitted bills to the County for payment. The trial court determined that the Act also limited the amount the hospital could recover. The hospital appealed, in Health Care Authority of the City of Huntsville v. Madison County, 601 So.2d 459 (Ala.1992). The supreme court restated its holding that the County was required to pay hospital bills of indigent residents who had been involuntarily committed to the custody of the Department of Mental Health. 601 So.2d at 460. The supreme court further held that all sections of the Act were to be read in pari materia with the involuntary-commitment statutes, including those sections of the Act that limit the amount of the hospital’s recovery.
We agree with the trial court that § 14-6-19, placing financial responsibility for indigent inmates on the county where the jail is located, should be read in pari materia with the Health Care Responsibility Act, placing financial responsibility for health care for an indigent at a regional hospital with the county where the indigent resides. Both statutes concern medical care for indigents and the responsibility of the county to pay for such care. Statutes that relate to the same subject matter should be construed together in order to determine the intent of the legislature, which, in this case, was to *340 place the indigent’s health-care costs on the county. See Childree, 548 So.2d 419.
Section 14-6-19 requires a county to pay for medical care rendered to indigent inmates. At the same time, the Health Care Responsibility Act places the financial responsibility on the county in which an indigent resides, but limits the extent of the county’s financial responsibility to a specified per diem reimbursement amount. Although a county is obligated to provide medical care to indigent jail inmates under § 14-6-19, the county’s financial responsibility for indigents is limited to the amount specified by the Health Care Responsibility Act.[1] See Health Care Auth. of the City of Huntsville v. Madison County, 601 So.2d 459.
USAMC argues that its action was brought solely under § 14-6-19, making the Health Care Responsibility Act and the 1983 agreement inapplicable. However, § 14-6-19 does not create a cause of action. It merely provides that the county is responsible for the medical bills of indigent inmates. Similarly, the Health Care Responsibility Act does not, in and of itself, create a cause of action. In Tuscaloosa County v. Children’s Hospital, Inc., 486 So.2d 1302 (Ala.Civ.App. 1986), Children’s Hospital sought repayment of medical care under the Act for an indigent patient residing in Tuscaloosa County. Tuscaloosa County argued that the action was in tort and subject to a one-year statute of limitations. Children’s Hospital argued that the action was in the nature of an open account. This court noted that the Act was intended to place the ultimate financial responsibility for medical treatment upon the county in which the indigent resides. The court held that an action brought under the Health Care Responsibility Act is in the nature of an action on an implied contract, the terms of which are not fixed by the parties, making it an open account. In the present case, USAMC’s complaint commenced an action on an open account to recover money from the County for services rendered to indigent patients.
USAMC argues that if the Act applies in this case, then the County had to certify the inmates as indigent in accordance with § 22-21-295, a part of that Act. However, USAMC did not raise this argument in the trial court.[2] It is a well-settled rule that an appellate court’s review is limited to those issues that were raised before the trial court. Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala.1994).
Section 22-21-295, a part of the Act, provides that residents must meet certain eligibility standards and be certified as indigent by the county. Although Escam- *341 bia County failed to follow this portion of the Act, USAMC did not raise this argument in the trial court. We note that in its amended complaint, USAMC contends that all three of the inmates “were unable to provide all or a portion of these medical services for themselves, and therefore, Defendant, Escambia County, Alabama has legal responsibility therefor.” If the inmates were not indigent, then the County would owe nothing for their medical care. Thus, USAMC recognized that the inmates were indigent.
The 1983 agreement between USAMC and Escambia County, written by USAMC, refers to “indigent patients.” The words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract. Tanner v. Church’s Fried Chicken, Inc., 582 So.2d 449 (Ala.1991). “When the terms of a contract are unambiguous, the construction of that contract and its legal effect are questions of law for the trial court and, if appropriate, may be decided by summary judgment.” Whitetail Dev. Corp. v. Nick-elson, 689 So.2d 865, 867 (Ala.Civ.App.1996). If the terms of a contract are ambiguous, then the determination of the true meaning of the contract is a question of fact for the fact-finder. Dill v. Blakeney, 568 So.2d 774 (Ala.1990). Ambiguity exists when a term is reasonably susceptible to more than one interpretation. Cannon v. State Farm Mut. Auto. Ins. Co., 590 So.2d 191 (Ala.1991). “All the provisions of a contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit.” City of Fairhope v. Town of Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968).
We note that the language of a contract is to be construed most strictly against the party drafting the contract. Loerch v. National Bank of Commerce of Birmingham, 624 So.2d 552 (Ala.1993). USAMC drafted the agreement that it now argues is ambiguous. Had USAMC wanted to exclude indigent inmates, it could have done so. Instead, USAMC used the broad term “indigent patients,” which would include indigent patients who were also inmates. Accordingly, USAMC is barred by the 1983 agreement from recovering the medical expenses of the indigent Escambia County inmates. The judgment of the trial court is affirmed.
OPINION OF FEBRUARY 25, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED AND RULE 39(k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.

. USAMC admitted in its answers to interrogatories that if the Act applied it would be entitled to only $6,854.50 for Boutwell, $3,616.05 for Hill, and $11,571.36 for McNabb.

. On application for rehearing, USAMC contends that it properly raised the issue whether these three inmates were certified as indigent in accordance with § 22-21-295. However, in its response to Escambia County's motion for a summary judgment, USAMC argued that the indigent requirements under § 14-6-19 and the requirements under § 22-21-292 are not the same and that there was therefore a fact question as to whether the statutes should be read together. We note that even if US-AMC had properly raised this issue, § 22-21-294 provides that a person may be certified as indigent before admission or subsequent to admission for an emergency condition, but in either event, if a determination of whether a patient meets or does not meet the eligibility standard for certification under the Health Care Responsibility Act is not made within 90 days after written notification by the hospital to the county, the patient shall be considered to have been certified upon admission as indigent.