We granted the petition for the writ of certiorari filed by the University of South Alabama d/b/a University of South Alabama Medical Center (hereinafter "USAMC") to determine whether the Court of Civil Appeals erred in holding that USAMC is not entitled to recover from Escambia County charges for medical care for three indigent Escambia County jail inmates. We reverse and remand.
The Court of Civil Appeals set forth the following facts:
 "On December 1, 1983, USAMC, which is located in Mobile County, entered into an agreement with Escambia County whereby the County agreed to do certain affirmative acts for the benefit of USAMC, including voting for USAMC to retain the contract to provide emergency medical services for Escambia County, in exchange for USAMC's not filing claims or lawsuits against Escambia County under the Health Care Responsibility Act, § 22-21-290 et seq., Ala. Code 1975, to recover costs of caring for `indigent patients' residing in Escambia County. The agreement was drafted by an attorney for USAMC.
 "On November 23, 1994, Jessie Boutwell, an indigent inmate at the Escambia County jail, was admitted to USAMC for treatment. Boutwell was discharged on December 3, 1994, after incurring charges totaling $40,973.97. On May 15, 1996, Noriyuki Hill, another indigent inmate at the Escambia County jail, was admitted to USAMC for treatment. Hill was released on May 20, 1996, after incurring charges of $6,119. On July 29, 1996, Winston L. McNabb, another indigent inmate at the Escambia County jail, was admitted to USAMC for treatment. McNabb died in the hospital on August 14, 1996, after incurring charges of $134,116.
 "USAMC sued Escambia County, Boutwell, Hill, and McNabb's estate, seeking payment of the inmates' hospital bills. In its complaint, USAMC alleged that Boutwell, Hill, and McNabb were unable to pay all or a portion of the medical costs and that Escambia County was legally responsible under § 14-6-19, Ala. Code 1975, which provides that a county is responsible for medical expenses for indigent inmates incarcerated in that county. USAMC contended in its complaint that the County's liability arose solely under § 14-6-19, and that the 1983 agreement is limited to claims brought under the Health Care Responsibility Act.
 "Escambia County moved for a summary judgment, which the court granted. The trial court entered a Rule 54(b), Ala.R.Civ.P., order certifying the summary judgment as final. At that time, both Boutwell and McNabb were deceased."
University of South Alabama v. Escambia County, 812 So.2d 336
(Ala.Civ.App. 2000) (emphasis added).
USAMC appealed to this Court. We transferred the case to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals *Page 344 
held that the 1983 agreement between USAMC and Escambia County barred USAMC from recovering charges it had incurred in providing medical care for the indigent Escambia County inmates and affirmed the judgment of the trial court.
The 1983 agreement was in the form of a letter, dated December 1, 1983, written by Maurice A. Downing,[1] the attorney for USAMC, to Brock B. Gordon,[2] as the attorney for Escambia County. The letter read:
 "This confirms the content of recent discussions concerning pending litigation over indigent health care claims against Clarke County and Escambia County.
 "In these discussions the University of South Alabama Medical Center has agreed to do the following:
 "(1) To forthwith dismiss, with prejudice, all pending suits presently filed against Clarke County and Escambia County for the recovery of health care provided their indigent residents as of the date of this letter.
 "(2) To accept for admission from this date forward all emergency and transfer patients who are residents of Clarke County or Escambia County, respectively, who need specialized medical services not otherwise available in the County of their residence, whether or not such patients are indigent.
 "(3) With respect to indigent patients, so long as Clarke County and Escambia County each comply with their respective undertakings in No. 2 below, not to file further claims or suits against Clark County or Escambia County under the Alabama Health Care Responsibility Act, Alabama Code 1975, § 22-21-290, et seq.
 "In consideration of the promise of USAMC to do the above, Clarke County and Escambia County have each agreed to do the following:
 "(1) That all votes held by Clarke County and all votes held by Escambia County shall be cast in favor of USAMC as the facility to retain the Emergency Medical System Unit (EMS) at the meeting of the Southwest Alabama Emergency Medical Services System, Inc. on Friday, December 2, 1983, or at a later adjournment thereof.
 "(2) To coordinate with USAMC in efforts to secure funding to provide health care for indigent residents of Clarke County and Escambia County.
 "It is understood that this agreement applies separately to . . . Clarke County and Escambia County, and that each has agreed to cast its respective votes in favor of USAMC at the above meeting, and that this agreement is not conditional upon USAMC retaining the EMS unit." *Page 345 
The standard by which this Court will review a motion for summary judgment is well established:
 "The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d) Ala. Code 1975. Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999).
Our rules relating to construing contracts are also well established. "General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract. A court may not make a new contract for the parties or rewrite their contract under the guise of construing it."Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564, 570 (Ala. 1999). With regard to ambiguity, this Court has stated:
 "Whether an agreement is ambiguous is a question of law for the trial court. Terry Cove North v. Baldwin County Sewer Authority, Inc, 480 So.2d 1171 (Ala. 1985). The agreement must be construed in its entirety, and a single provision or sentence is not to be disassociated from others having reference to the same subject matter. Englund's Flying Service, Inc v. Mobile Airport Authority, 536 So.2d 1371 (Ala. 1988). Further, we point out that just because the parties allege different constructions of an agreement, it does not necessarily mean that the agreement is ambiguous. Englund's."
Yu v. Stephens, 591 So.2d 858, 859-60 (Ala. 1991).
The 1983 agreement is not ambiguous. It specifically prohibits USAMC from filing "further claims or suits against . . . Escambia County under the Alabama Health Care Responsibility Act." The Alabama Health Care Responsibility Act (hereinafter "AHCRA") became effective in 1979 for the purpose of placing "the ultimate financial obligation for the medical treatment of indigents on the county in which the indigent resides." § 22-21-291, Ala. Code 1975. A medical provider can sue under AHCRA, and the suit "is in the nature of a suit on a contract implied by law."Tuscaloosa County v. Children's Hosp., Inc., 486 So.2d 1302, 1303
(Ala.Civ.App. 1986).
This action is not one arising out of AHCRA. Instead, USAMC bases its claim on the obligation imposed upon Escambia County by § 14-6-19, Ala. Code 1975, which provides:
 "Necessary clothing and bedding must be furnished by the sheriff or jailer, at *Page 346 
the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves."
This section became effective in 1852, and allows a medical provider to sue to recover charges for medical services rendered to inmates in the county jail who are unable to pay for medicines or medical services.Malone v. Escambia County, 116 Ala. 214, 22 So. 503 (1897). Obviously, a county's obligation — and a medical provider's corresponding right — with regard to inmates in the county jail predated AHCRA by many years. Also, while AHCRA deals with a county's obligation with regard to resident indigents, § 14-6-19 deals with the county's obligation with regard to indigent inmates in its jails, regardless of their county residence. The 1983 agreement, by its clear terms, does not bar USAMC's claim for payment of its charges for treating the indigent inmates of the Escambia County jail. Therefore, the trial court erred in granting Escambia County's summary-judgment motion, and the Court of Civil Appeals erred in affirming the judgment of the trial court. We reverse the judgment of the Court of Civil Appeals and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Harwood, and Stuart, JJ., concur.
Moore, C.J., concurs specially.
[1] Mr. Downing is deceased.
[2] USAMC offered the following affidavit from Mr. Gordon in opposition to Escambia County's summary-judgment motion:
 "I am Brock Gordon and I have been an attorney licensed to practice in Mobile County for years. I have reviewed a copy of the letter to me from [Maurice] Downing dated 1 December 1983 which is attached to this affidavit as Exhibit A. Based upon my best recollection of the matter, i.e., my letter, the agreement between the University of South Alabama Medical Center and Clarke and Escambia Counties represented by this letter was not intended to and did not include any consideration of prisoners or either [County's] responsibilities for medical treatment for prisoners."