PER CURIAM.
On July 9, 2007, C.D.S. (“the father”) filed a notice of appeal and a motion in this court to vacate a circuit court’s June 28, 2007, judgment and to stay that court’s proceedings pending the appeal of that court’s judgment modifying custody. We grant the father’s motion to vacate; we also remand this case and order that it be reassigned to a different circuit court judge upon remand. Further proceedings in this case shall be stayed until the circuit court judge to whom the case is reassigned has had an opportunity to conduct an evi-dentiary hearing on the matter of the children’s custody pursuant to the Ex parte McLendon, 455 So.2d 863 (Ala.1984),[1] standard and this court’s order of June 27, 2007. Our action in reassigning this case is not intended to disparage the circuit court judge in this case; instead, as we further explain below, it is merely intended to preserve the appearance of justice.
As an initial observation, we note that this is not the first time we have been called to address the postdivorce custody dispute between the father and K.S.S. (“the mother”). On March 2, 2007, this court dismissed a previous appeal by the father as being from a void judgment. C.D.S. v. K.S.S., 963 So.2d 125 (Ala.Civ.App.2007). In that case, the circuit court, on January 19, 2006, entered an order determining that the children of the mother and the father, K.S. and R.P.S., were *785 dependent. As we noted in C.D.S., the circuit court did not have jurisdiction to find the children dependent. Section 12-15-30(a), Ala.Code 1975, provides that “ ‘[t]he juvenile court shall exercise exclusive original jurisdiction of proceedings in which a child is alleged to be ... depen-dant. ...”’ C.D.S., 963 So.2d at 127 n. 1. The circuit court on that same day then entered another order transferring the proceedings to the juvenile court. The Houston County circuit judge presiding over this matter is also designated to serve as the juvenile court judge in Houston County. The juvenile court hearing the matter entered an order on March 14, 2006, “returning physical custody of the children to the father; maintaining legal custody in the Department of Human Resources (‘DHR’); and denying, as moot, the guardian ad litem’s petitions to find the children dependent.” C.D.S., 963 So.2d at 127. The juvenile court then heard evidence, and, on July 20, 2006, entered a judgment purporting to, among other things, relieve DHR of custody of K.S. and R.P.S.; return K.S. to the custody of the father; find the father unfit to have custody of R.P.S.; and grant custody of R.P.S. to the mother. In addressing this court’s appellate jurisdiction over the father’s appeal from the juvenile court’s July 20, 2006, judgment, we stated:
“[T]he juvenile court’s denial of the dependency petitions on March 14, 2006, not only terminated the dependency proceedings but also constituted a determination on the allegations of circumstances constituting an emergency with regard to the emotional welfare of the children. Those allegations were- the sole basis for the juvenile court’s concurrent jurisdiction over custody issues under the circumstances of this case. Thus, when it entered its purported judgment on July 20, 2006, the juvenile court did not have subject-matter jurisdiction over the parties’ custody dispute, and, therefore, that purported judgment is void.
“Under the circumstances of this case, the only court that had subject-matter jurisdiction over the parties’ custody dispute after the juvenile court denied the dependency petitions was the circuit court. Consequently, the juvenile court should have transferred case no. DR-03-752.02 back to the circuit court for it to adjudicate the custody dispute in accordance with the standard enunciated by the Alabama Supreme Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984), instead of proceeding further.
“Because the juvenile court’s purported July 20, 2006, judgment is void, we dismiss the father’s appeal insofar as it seeks review of the purported July 20, 2006, judgment of the juvenile court, and we direct the juvenile court (1) to set aside its purported judgment of July 20, 2006, and (2) to transfer case no. DR-03-752.02 back to the circuit court for it to adjudicate the custody dispute in accordance with the McLendon standard.”
C.D.S., 963 So.2d at 130 (footnote'omitted). Subsequent to this court’s dismissal of the appeal in C.D.S., the proceedings at the circuit court level have led the father to file in this court a petition for a writ of mandamus directing, among other things, the circuit court judge to recuse himself (case no. 2060633),[2] as well as motions for stays of the circuit court’s orders and mo *786 tions to vacate those orders (case no. 2060779 and case no. 2060907).[3] However, what is most pertinent to our decision today is the circuit court judge’s difficulty in putting out of his mind his previously expressed views or findings as to custody that we have determined are based, at least in part, on evidence received by the juvenile court in proceedings it did not have jurisdiction to conduct.
Significantly, after this court dismissed the father’s appeal in C.D.S. and apparently after the juvenile court transferred the case to the circuit court, the circuit court heard ore tenus evidence on April 25, 2007. At that April 25, 2007, hearing the circuit court only permitted the presentation of evidence regarding events that had occurred subsequent to the entry of the juvenile court’s July 20, 2006, judgment purporting to resolve the custody dispute. Therefore, the father moved to introduce the records of all previous proceedings concerning the custody dispute, and the circuit court admitted them.
On May 7, 2007, the circuit court entered an order that stated: “The court adopts the statement of facts contained in its Juvenile Order of July 20, 2006.” Continuing, the May 7, 2007, order also stated that “[t]he evidence is clear that unless the Department of Human Resources and this court remain involved with [the father, who had physical custody of the children], there will be no meaningful visitation” allowed the mother. The circuit court’s order further found “[t]hat it would materially promote the best interest of the minor child [R.P.S.] if the mother ... had custody.” The circuit court ordered that custody of R.P.S. be transferred to the mother, but it also ordered that the custody of K.S. shall remain with the father.
On June 5, 2007, the father filed a notice of appeal from the May 7, 2007, order (case no. 2060779), and this court ordered a stay of that order. Then, on June 7, 2007, the mother filed in the juvenile court a motion for a temporary order placing R.P.S. with the mother pending the resolution of the father’s appeal. The circuit court then entered an order on June 8, 2007, purportedly in both cases — case no. JU-06-019 and case no. DR-03-752— that stated that upon this court’s stay of the May 7, 2007, order, “the previous order [apparently referring to the circuit court’s January 19, 2006, order] adjudicating dependency and granting custody of the children to DHR is now effective.” The circuit court continued: “Therefore, [the] mother’s motion for temporary custody is denied. The children remain dependent and custody is given to DHR with placement of [R.P.S.] with [the] mother.”
On June 14, 2007, the father filed in case no. 2060779 a motion to vacate the circuit court’s order and to enforce the decision of this court issued on March 2, 2007. After informing the parties that we would treat the father’s motion as a petition for a writ of mandamus and requesting and receiving answers to the father’s petition from the mother and the guardian ad litem, this court entered an order on June 27, 2007, in case no. 2060779 stating:
“IT IS ORDERED that the petition be, and the same is hereby, granted. Pursuant to this court’s order of June 19, 2007, appellant’s motion to vacate lower court order and enforce order of this Court is treated as a petition for *787 writ of mandamus. Petition for writ of mandamus is granted. This court, having previously found in its opinion of March 2, 2007, that the January 19, 2006, order of the circuit court adjudicating dependency and placing custody of the children with DHR to be void, now finds that the June 8, 2007, temporary order in which the circuit court revived the January 19, 2006, order is void. The court further finds the May 7, 2007, order of the circuit court to be void due to its adoption of the juvenile court’s July 20, 2006, order which this court also determined was void in our March 2, 2007, opinion. The circuit court is to follow the March 2, 2007, opinion of this court wherein it was stated: ‘[T]he circuit court [is] to adjudicate the custody dispute in accordance with the McLen-don [Ex parte McLendon, 455 So.2d 863 (Ala.1984)] standard.’ (Emphasis added.) Until such time, the circuit court’s January 18, 2005, order[4] is in effect.”
The day after this court issued the above order the circuit court entered an order finding that K.S. had visited the mother only once since August 2006, that the father continued a pattern of alienating the affections of the children toward the mother, and that “it would materially promote the best interests of [R.P.S.] if [the] mother were to be granted custody.” The circuit court also ordered that physical custody of R.P.S. be transferred to the mother, that K.S. remain in the custody of the father, that the parties exchange income affidavits and compute child support within 30 days of the date of the order, and that the father pay the mother attorney fees.
In entering its order on June 28, 2007, the day after this court had vacated the May 7, 2007, order, the circuit court did not “adjudicate” the custody dispute in a manner consistent with this court’s instructions in its March 2, 2007, opinion, given the context in which those instructions were issued. Significantly, in our opinion of March 2, 2007, we noted that on March 14, 2006, the juvenile court had entered an order denying the dependency petitions, which “not only terminated the dependency proceedings, but also constituted a determination of the allegations of circumstances constituting an emergency with regard to the emotional welfare of the children.” C.D.S., 963 So.2d at 130. It was after the juvenile court entered its March 14, 2006, order that the juvenile court proceeded to conduct a hearing and receive ore tenus testimony regarding the mother’s petition seeking a modification of the order determining custody. As stated in our previous opinion, “the juvenile court should have transferred case no. DR-03-752.02 back to the circuit court for it to adjudicate the custody dispute in accordance with the standard enunciated by the Alabama Supreme Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984), instead of proceeding further.” 963 So.2d at 130.
Given the context in which we made the above statement, “adjudicate” means more than merely permitting the presentation of evidence regarding events that had occurred subsequent to the entry of the juvenile court’s July 20, 2006, judgment purporting to resolve the custody dispute. Because the juvenile court lacked jurisdiction to conduct any hearing regarding the children’s custody following the entry of its March 14, 2006, order, and because the juvenile court’s judgment of *788 July 20, 2006, was void for lack of subject-matter jurisdiction, the circuit court in this case must allow the parties to conduct a full trial in the circuit court without reliance upon the void juvenile court proceedings to properly “adjudicate” the issue of the children’s custody. See Summerhill v. Craft, 425 So.2d 1055, 1056 (Ala.1982) (holding that a circuit court had erred in admitting a probate court’s order when the probate court’s order was void because of a lack of jurisdiction); see also 32A C.J.S. Evidence § 863 (2007) (noting that when proceedings are void, the record thereof is inadmissible); cf. Charles W. Gamble, McElroy’s Alabama Evidence § 484.02(2) (5th ed.1996) (noting that “circuit courts do not take judicial notice of the records of another court”).[5]
Although the circuit court conducted an ore tenus hearing on April 25, 2007, the circuit court only allowed the presentation of evidence regarding events that had occurred subsequent to the entry of the juvenile court’s July 20, 2006, judgment purporting to resolve the custody dispute. In this situation the father was faced with an unenviable “catch-22” dilemma. The father had to choose between, on the one hand, introducing the records from the previous proceedings and risking this court’s determining that his action had invited error and, on the other hand, not introducing the records from the previous proceedings and risking this court’s determining that the judgment must be affirmed because the record on appeal was incomplete. We decline to hold that the father invited error by electing to introduce the records from the previous proceedings in the custody dispute under these circumstances.
The circuit court’s June 28, 2007, judgment, entered the day after the entry of this court’s order vacating the May 7, 2007, judgment, also appears to have been made in reliance, at least in part, upon proceedings in the juvenile court that the juvenile court was without jurisdiction to conduct and without affording the father an opportunity to conduct a full evidentia-ry hearing.
In summation, by considering evidence presented in the proceedings that the juvenile court was without jurisdiction to conduct and by not allowing the father to present evidence of events that occurred before the entry of the juvenile court’s July 20, 2006, judgment purporting to resolve the custody dispute, the circuit court has not adjudicated this dispute in a manner consistent with this court’s March 2, 2007, opinion.[6]
Considered as a whole, the circuit court judge’s errors in this custody dispute indicate that the circuit court judge may have had some difficulty in putting aside the views regarding custody that he expressed when he acted as a juvenile court judge in performing the task at hand as a circuit court judge. Therefore, we find it advisable to order the reassignment of the case to a different circuit court judge. We take the opportunity presented by this situation to explain the necessity and the basis for our action.
*789 As an initial matter, we note that this court’s power to order the reassignment of a case upon remand derives from several subsections of Art. VI, § 141, Ala. Const. 1901 (Official Recomp.).[7] Article VI, § 141(c), provides: “The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.” Thus, under § 141(c), this court may issue an order reassigning a case to a different trial judge when such an order is in aid of our appellate jurisdiction to enforce compliance with this court’s previous opinions or orders.
Our authority to order a reassignment is also derived from Art. VI, § 141(b), which provides: “The court of civil appeals shall consist of such number of judges as may be provided by law and shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court.” (Emphasis added.) The law. governing the exercise of our appellate jurisdiction includes § 12-3-11, Ala.Code 1975. Under § 12-3-11 this court, like the Court of Criminal Appeals, has the authority to grant injunctions and to issue such writs as “are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction.”
Despite the facts that what is now Art. VI was ratified after § 12-3-11, Ala.Code 1975, was enacted and that Art. VI, § 141(d), which tracks the language of § 12-3-11, pertains only to the Court of Criminal Appeals, the ratification of what is now Art. VI should not be construed to eviscerate this court’s authority under § 12-3-11. Indeed, we have invoked that section in numerous cases. See State Health Planning & Dev. Agency v. Baptist Med. Ctr., 446 So.2d 619, 622 (AIa.Civ.App.1983) (invoking § 12-3-11 and stating that this court is empowered to issue necessary remedial orders or writs to prevent judicial disorder and ordering the consolidation of numerous appeals from an administrative agency into one circuit court); Department of Indus. Relations v. Pickett, 437 So.2d 1303, 1304-05 (Ala.Civ.App.1983) (remanding a case for the trial court to follow this court’s mandate within 14 days); and Abbett v. Treadwell, 816 So.2d 477, 482-83 (Ala.Civ.App.2000) (Crawley, J., joined by Thompson, J., concurring in the result)(noting that this court has general superintendence and control of trial courts in domestic-relations matters under Ala.Code 1975, § 12-3-11). Additionally, in Ex parte Department of Mental Health, 511 So.2d 181, 185 (Ala.1987), our supreme court quoted with approval portions this court’s opinion in Ex parte Department of Mental Health & Mental Retardation, 491 So.2d 956, 959 (Ala.Civ.App.1986), in which this court stated that, when trial courts do not cooperate concerning concurrent jurisdiction over a juvenile, “ ‘this court will not hesitate to exercise its supervisory powers over these , courts pursuant to Ala.Code (1975), § 12-3-11.’ ” 511 So.2d at 185.
Typically, the appellate courts in this state have not ordered the reassignment of a case as much as they have ordered trial judges to recuse themselves from cases when necessary. One scholar has described the difference between recu-sal and reassignment in the context of federal actions as follows:
*790 “The reassignment procedure is distinct from the recusal procedures. Re-.cusal arises either from a litigant’s petition, under Section 144 of 28 U.S.C., or by the district judge, under Section 455 of 28 U.S.C. The recusal statutes direct the judge to recuse herself when there is a conflict of interest, when there is ‘an opinion that derives from an extrajudicial source,’ or when there is ‘a high degree of favoritism or antagonism as to make fair judgment impossible.’ Reassignment arises when an appellate panel determines that it would further justice for a different district judge to proceed on remand.”
James A. Worth, Destigmatizing the Reassignment Power, 17 Geo. J. Legal Ethics 565, 565 (2004) (footnotes omitted). In United States v. White, 846 F.2d 678 (11th Cir.1988), the United States Court of Appeals for the Eleventh Circuit explained:
“In cases where there is no proof of personal bias, the Second Circuit has persuasively enumerated factors which should be considered by an appellate court in deciding whether to exercise its supervisory authority to reassign a case. These criteria include:
“ ‘(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.’
“United States v. Robin, 553 F.2d 8, 10 (2d Cir.1977) (en banc). Although this Court has not explicitly adopted these criteria, we have cited Robin with approval. See United States v. Long, 656 F.2d 1162, 1166 n. 7 (5th Cir. Unit A Sept.1981). Moreover, other circuits have applied these principles. See, e.g., United States v. Garcia, 694 F.2d 294 (1st Cir.1982); United States v. Sears, Roebuck & Co., 785 F.2d 777 (9th Cir.), cert. denied, [479] U.S. [988], 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).”
846 F.2d at 696. Recently, the Alabama Court of Criminal Appeals applied a similar test in addressing the issue of the recusal of a trial judge in State v. Moore, [Ms. CR-06-0747, May 11, 2007] — So.2d -, - (Ala.Crim.App.2007). We adopt and apply the factors set out in United States v. Robin, 553 F.2d 8 (2d Cir.1977), to this matter. In doing so, we are mindful of the statement the United States Court of Appeals for the Second Circuit made in Robin, i.e., that reassignment on remand “does not imply any personal criticism of the trial or sentencing judge.” 553 F.2d at 10. That being noted,
“[i]n the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his attention, see, e.g., United States v. Brown, 470 F.2d 285, 288 (2d Cir.1972) (court twice used improper sentencing procedure), reassignment to another judge may be advisable in order to avoid ‘an exercise in futility in which the Court is merely marching up the hill only to march right down again.’ United States v. Tucker, 404 U.S. 443, 452, 92 S.Ct. 589, 594, 30 L.Ed.2d 592 (1972) (Blackmun, J., dissenting).”
Robin, 553 F.2d at 11. Applying the Robin factors to this case, we have determined that reassignment of this case to a different circuit court judge is warranted because it is likely that “ ‘the original judge would have difficulty putting his previous views and findings aside.’ ” United States v. Martin, 455 F.3d 1227, 1242 (11th *791 Cir.2006)(quoting United States v. Torkington, 874 F.2d 1441, 1447 (11th Cir.1989)). The reassignment of this case to a different circuit court judge is also “advisable to preserve the appearance of justice.” Robin, 553 F.2d at 10. Additionally, we do not believe that reassigning this case to a different circuit court judge would entail “waste ... out of proportion to any gain in preserving the appearance of fairness.” White, 846 F.2d at 696.
To summarize, our June 27, 2007, order vacated the May 7, 2007, judgment appealed from, and we now vacate the June 28, 2007, order of the circuit court because of the circuit court judge’s difficulty in putting out of his mind his previously expressed views as to custody that we have determined are based, at least in part, on evidence received by the juvenile court in proceedings it did not have jurisdiction to conduct and because the circuit court has not held a full evidentiary hearing in order to apply the McLendon test to determine custody. We also remand the case and order the reassignment of this case upon remand to a different circuit court judge, in order to conduct the full evidentiary hearing and apply the McLendon standard to the custody dispute. In reassigning the case to a different circuit court judge, we instruct the circuit court judge to take into consideration the principles regarding reassignment our Supreme Court established in Ex parte Jim Walter Homes, Inc., 776 So.2d 76 (Ala.2000). Finally, as we noted in our June 27, 2007, order, the original judgment divorcing the father and the mother will govern the custody of the children until a new circuit court judge has been appointed and has had an opportunity to conduct a hearing.
MOTION TO VACATE JUNE 28, 2007, ORDER, GRANTED; CASE REMANDED AND REASSIGNMENT ORDERED; STAY ISSUED PENDING REASSIGNMENT OF CASE ON REMAND.
All the Judges concur.

. We have summarized the holding of Ex parte McLendon in numerous cases; for example, in Barber v. Moore, 897 So.2d 1150, 1153 (Ala.Civ.App.2004), we stated:
"In Ex parte McLendon, supra, our supreme court held that the proper standard to be applied in child-custody cases wherein a parent has either voluntarily forfeited custody or has lost custody due to a prior judgment is whether there has been a material change in circumstances since the prior judgment; whether a change in custody will materially promote the best interests of the child; and whether the benefits of the change in custody will more than offset the inherently disruptive effect caused by uprooting the child. 455 So.2d at 865.”
Other cases that similarly reiterate the Ex parte McLendon standard include: Ex parte Martin, 961 So.2d 83, 87 (Ala.2006) (stating the McLendon standard); Bratton v. Romine, 819 So.2d 58, 61-62 (Ala.Civ.App.2001) (reciting the McLendon standard and noting that it is well-established); and Sims v. Sims, 515 So.2d 1, 3 (Ala.Civ.App.1987) (noting the McLendon standard).

. Among the facts alleged by the father in his petition for the writ of mandamus seeking the recusal of the circuit court judge are his claims that the circuit court judge refused to allow the father to impeach the credibility of the mother and, according to the father, "deemed that the father had abandoned his case when [the father] insisted on making an offer of proof." This court denied that petition.

. Incidentally, we also note that during the course of the father’s appeal in C.D.S., this court granted a stay of the juvenile court’s judgment. Subsequent to that stay being ordered, the juvenile court issued an order on August 3, 2006, that stated that the custody of the youngest child would remain with the mother pending appeal. This court then granted the father’s motion to vacate that order.

. The January 18, 2005, order divorced the mother and the father; awarded the parties joint legal custody of the two children; awarded the father primary physical custody of the children; and awarded the mother visitation.

. In this case the circuit court indicated at the April 25, 2007, proceeding that it was taking judicial notice of the evidence presented in the juvenile court; indeed, as noted above, the circuit court's May 7, 2007, judgment stated: "The court adopts the statement of facts contained in its Juvenile Order of July 20, 2006.”

. In addition, we note that the circuit court’s June 28, 2007, judgment is not a final judgment because it does not address the issue of child support, except to require the parties to submit income affidavits to the circuit court within 30 days.

. What is currently Art. VI, Ala. Const. 1901, was formerly, i.e., before the "Official Recompilation of the Constitution of Alabama of 1901, as amended” was completed in 2005, Amendment No. 328 to Alabama’s Constitution, which was proposed by Acts 1973, No. 1051, p. 1676. Amendment No. 328 was ratified on December 27, 1973.