MOORE, Judge.
J.H. (“the father”) appeals from a judgment of the Etowah Juvenile Court modifying the custody of H.H. (“the child”). We dismiss the appeal.

Procedural History

On December 29, 2008, the father filed a petition requesting that the juvenile court establish his paternity of the child, award him and J.W. (“the mother”) joint custody of the child, and award him liberal visitation. That case was assigned case number JU-08-540.01. On April 16, 2009, the juvenile court entered a judgment adopting a settlement agreement that had been entered between the parties. The judgment, among other things, adjudicated the father to be the father of the child and awarded the parties joint legal and physical custody of the child with the mother being designated as the primary physical custodian of the child; the parties were to exchange custody every other week.
Subsequent to the April 16, 2009, initial custody determination, the mother, on July 6, 2009, filed a petition for protection from abuse in the Etowah Circuit Court; that *872 petition was assigned case number DR-09-533.90. In that petition, the mother alleged, among other things, that the father had spanked the child with a belt, leaving bruises. The circuit court entered an ex parte protection order on July 6, 2009, which, among other things, awarded the mother temporary custody of the child and suspended the father’s visitation. That order was entered by the same judge who had presided over the paternity proceedings in the juvenile court.
On July 29, 2009, the juvenile court, sua sponte, entered an order in case number JU-08-540.01, stating, in pertinent part:
“Based upon the events referred to in the Petition for Protection from Abuse and Orders entered therein, [in case number] DR-09-533.90,
“IT IS HEREBY ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:
“1. The father’s visitation or ‘alternate custody’ referred to in Paragraph 4 of the Settlement Agreement dated 03/30/2009 and accompanying Order dated 04/l[6]/2009 is hereby suspended indefinitely, pending an investigation by the Etowah County Department of Human Resources [ (‘DHR’) ].
“2. DHR is hereby given Protective Supervision of the subject child, and this case shall be reviewed on the CIP docket. DHR is ordered and directed to provide services to the mother, the father, and the subject child.”
On October 23, 2009, the juvenile-court referee entered a judicial-review order in case number JU-08-540.01 stating that the Etowah County Department of Human Resources (“DHR”) must continue to provide protective supervision of the child. On April 19, 2010, the juvenile-court referee entered a second judicial-review order terminating DHR’s protective supervision of the child.
On May 13, 2010, the mother filed another petition for protection from abuse in the circuit court; that petition was assigned case number DR-09-533.91. Also, on May 21, 2010, the mother filed in the juvenile court a petition to modify custody alleging, in pertinent part:
“1. That the circumstances of the parties have changed in that the [father’s] violent and abusive temperament has escalated and that the needs of the minor child have changed.
“2. That the [father] is physically, verbally, mentally and emotionally abusive to the minor child and the [mother]. That on July 5, 2009, the [father] physically abused the minor child.... That since said date, the parties attempted to reconcile; however, despite anger management and parenting classes recommended by DHR, the [father’s] abusive and violent temperament has escalated and has resulted in the minor child being afraid of the [father]. That on May 13, 2010, the [father] came to the home of the [mother] and threatened her and that the [mother] was forced to seek a Protection From Abuse Order against the [father].... That the [mother] fears for the safety of the minor child while in the custody of the [father],
“3. That in [April] 2009, the ... father ... was granted joint legal and physical custody of the minor child and was granted alternate custody every other week. [The mother] avers that the [father] has not exercised said custody every other week as granted. That although the [father] was granted [custody] every other week, the [father] usually only has the minor child with him one or two days and then returns the minor child to the [mother] or leaves the minor child with his paternal grandfather.
*873 “4. [The mother] avers that on or about May 11, 2010, the [father] had the minor child in his physical custody. That the [father’s] father called the [mother] to come pick up the minor child at 9:00 A.M. because the [father] was suppose[d] to take the minor child to the doctor, but the [father’s] father could not awaken the [father]. That the [father] did not awaken until 3:00 P.M.
“5. That the [father] routinely has the 10 year old and 16 year old female children of his ex-girlfriend spend the night with him and that the 10 year old female sleeps in the bed with the [father].
“6. That the [father] has taken the minor child with him when he spends the night at his girlfriend’s house.
“7. [The mother] avers that it is in the best interest of the minor child that she be granted full care, control and custody of the minor child. [The mother] further avers that the [father] should be granted supervised standard visitation with the minor child until such time he completes parenting and anger management classes.”
The mother attached to her petition to modify a copy of the petition for protection from abuse that she had filed in case number DR-09-533.90 on July 6, 2009, and a copy of the “Ex Parte Protection Order” that was entered by the circuit court in that case on the same day. She also attached a copy of the petition for protection from abuse that she filed in case number DR-09-533.91 on May 13, 2010, and a copy of the “Ex Parte Protection Order” entered by the circuit court in that case the same day. The mother’s May 21, 2010, petition to modify was assigned case number JU-08-540.02.
On August 3, 2010, the juvenile court entered a judgment in case number JU-08-540.02, stating:
“The subject child was born out of wedlock on September 11, 2005. By agreement dated March 30, 2009, the parties agreed to share joint legal and physical custody of the child. Under this Agreement, the parties alternated physical custody every other week. On or about July 6, 2009, the father administered excessive corporal punishment to the subject child. [The] Etowah County Department of Human Resources [ (‘DHR’) ] became involved. The mother filed a Petition for Protection from Abuse (31 DR2009-533.90). This Court issued an Order in that case. This Court also entered in this JU [juvenile] case, an Order dated July 2[9], 2009 which ‘suspended indefinitely’ the father’s ‘alternating custody’ referred to in Paragraph Four (4) in the Settlement Agreement dated March 30, 2009.... DHR was granted Protective Supervision in this JU case. The father’s visitation was supervised by DHR. On October 19, 2009, the mother agreed to ‘drop’ the PFA [proteetion-from-abuse] Order and the Court acquiesced. While Eto-wah County DHR remained active in the case, the parties re-established a relationship, and the mother moved in with the father in November 2009. The parties cohabitated together with the subject child until March 2010. There is substantial conflict in the evidence about who had the child from March 2010 until May 12, 2010. DHR closed its case on April 19, 2010. On May 12, 2010 a verbal altercation occurred between the parties over physical custody. The next day (May 13, 2010) the mother filed a second Petition for Protection from Abuse (.91). This Court ordered no visitation and set a hearing for June 2, 2010. Both parties were present with counsel. The parties and counsel agreed to continue the PFA Order in effect and set that matter for a full hearing. In the *874 JU case, the mother, through counsel, filed a Petition to Modify. The father was served and employed counsel. That Petition was also set for a full hearing on July 30, 2010. Both parties were present with counsel.
“The mother is seeking a Modification of the Settlement Agreement dated March 30, 2009. Her position is that there has been a material change of circumstances since that date. In fact, there have been several ‘changes of circumstances’ since that date. First was the father’s physical abuse of the child in July 2009. Second was the reconciliation of the parents in November 2009 and their cohabitation until March 2010. Third was the separation of the parents in March 2010. The position of the father is that after the separation of the parties in March 2010, the parties agreed to and in fact did resume the arrangement of alternating weekly physical custody. The mother denies this. The point is simply this: the parties cohabitating together from November 2009 through March 2010 totally nullifies the March 30, 2009 Agreement and the April 1[6, 2009] Order. The mother testified that, after the March 2010 separation, the parties agreed to resume the alternating weeks of physical custody. Her position is that the father was not fulfilling his half of the agreement. The father began a week of his physical custody on Sunday, May 9th, but on Monday, May 10th, the father left the child all day with the paternal grandfather. The father got the child on Monday night. He had agreed to take the child to a doctor’s appointment on Tuesday morning. However, the paternal grandfather called the mother on Tuesday morning to come get the child and take him to the appointment. This reaffirmed in the mother’s mind that the father was not fulfilling his responsibilities. The mother refused to allow the father to have the child after Tuesday, May 11th. The verbal and text messaging altercation began. The mother filed her second Petition for Protection from Abuse. Based upon the evidence presented at this hearing, there was no basis whatsoever for her petition. There was perhaps verbal harassment but absolutely no abuse. Therefore the PFA Order dated May 13, 2010 is vacated and set aside.
“The issue to be decided by this Court now is whether (a) to resume the alternating physical custody arrangement or (b) order something else. The Court has already stated one reason not to resume the alternating physical custody agreement. Other reasons exist why that is not now in the child’s best interest. The mother now lives in the maternal grandmother’s home. The mother is a full-time student. The maternal grandmother can provide assistance to the mother. The mother has plans to enroll the child in five year old kindergarten at Coosa Christian School. The father lives in a separate, rent-free residence on land owned by the paternal grandfather. He is self-employed and cuts grass. He has no regular customers. He does not own a vehicle. He borrows a vehicle from a friend. Comparing and contrasting the two situations, the mother is the better choice.
“IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:
“1. The temporary care, custody and control of the subject child ... is hereby vested in the mother.... The mother shall be responsible for all medical care and treatment of said child, including surgical procedures, as well as being authorized to travel within and [outside] the State of Alabama with said child.
*875 “2. The father ... shall have supervised visitation as follows:
“(a) Every other weekend from Friday at 6:00 p.m. through Sunday at 6:00 p.m. beginning Friday, August 6, 2010. The parties will exchange the child at the Etowah County Sheriffs Office.
“(b) The paternal grandfather shall supervise all visitations for the father. The mother must be able to contact the paternal grandfather at any time to determine the child’s location. The father and the child do not have to be in the physical presence of the paternal grandfather, but the paternal grandfather must know at all times the exact location of the father and [the] child. The father shall not have anyone present during his visitation that is not related by blood to the child.
“(c) The father shall have Thanksgiving from 6:00 p.m. on Thursday through the next day at 6:00 p.m.
“(d) The father shall have Christmas from December 25 at 6:00 p.m. until December 31 at 6:00 p.m.
“(e) The father shall have Father’s Day even if it is not his regular weekend.
“(f) The mother shall have Mother’s Day even if it is the father’s regular weekend.
“3. The parties are Enjoined and Restrained from any and all contact or communication with each other. They shall communicate only through the grandparents.
“4. Both parties and all those in privity with them are Enjoined and Restrained from making any disparaging comments about the other party in the presence of the child.
“5. All parties and all those in privity with them are Enjoined and Restrained from reporting any information about the child or either parent to any law enforcement agency or the Etowah County DHR unless such person immediately reports the identical information by sworn affidavit to this Court.
“6. The father is declared to owe a duty to pay child support to the mother for the benefit of the child, but no specific amount is ordered at this time.
“7. There being no just reason for delay in the entry of a final judgment, this Order is made final and appealable under Rule 54(b)[, Ala. R. Civ. P.].”
On August 17, 2010, the father filed a motion to alter, amend, or vacate the judgment; that motion was denied on August 18, 2010. On September 1, 2010, the father filed his notice of appeal to this court.

Discussion

On appeal, the father argues that the juvenile court lacked subject-matter jurisdiction to enter the August 3, 2010, judgment. He also argues that the juvenile court lacked subject-matter jurisdiction to enter the July 29, 2009, judgment.
The record reveals that the custody of the child was initially determined by the juvenile court on April 16, 2009, in case number JU-08-540.01, a paternity action that was initiated by the father on December 29, 2008. At the time the paternity action was initiated,
“only juvenile courts could adjudicate such paternity cases. See former § 12-15-31(2), Ala.Code 1975 (providing that juvenile courts shall have exclusive original jurisdiction ‘[i]n proceedings to establish paternity of a child born out of wedlock’). As part of a paternity proceeding, a juvenile court also could decide custody and child-support issues. See former § 12-15-30(b)(1), Ala.Code 1975 (providing that the juvenile court shall exercise exclusive original jurisdiction of ‘[proceedings to determine cus *876 tody ... of a child when the child is otherwise before the court’); and C.D.W. v. State ex rel. J.O.S., 852 So.2d 159 (Ala.Civ.App.2002) (holding that an action seeking to establish paternity and for an award of child support is within the juvenile court’s jurisdiction).”
Ex parte L.N.K, 64 So.3d 656, 657 (Ala. Civ.App.2010). Thus, we conclude that the juvenile court had jurisdiction to enter the initial custody judgment on April 16, 2009.
We note, however, that, over two months after the April 16, 2009, judgment was entered, the juvenile court, on July 29, 2009, attempted to enter an order modifying the April 16, 2009, judgment. No petition had been filed in the juvenile court requesting the modification. Moreover, even if a modification petition had been filed, the juvenile court would have lacked subject-matter jurisdiction over that petition.
“Formerly, once a juvenile court decided custody and child-support issues as part of a paternity proceeding, that juvenile court retained continuing exclusive jurisdiction over those issues unless it terminated its own jurisdiction. See former § 12-15-82, Ala.Code 1975 (providing that, once a juvenile court obtains jurisdiction in any case involving a child, that court retains jurisdiction over that case until the child reaches the age of 21 years or until the court, by its own order, terminates that jurisdiction); see also W.B.G.M. v. P.S.T., 999 So.2d 971 (Ala.Civ.App.2008). However, in 2008, the legislature enacted the new Alabama Juvenile Justice Act (‘the new AJJA’), § 12-15-101 et seq., Ala.Code 1975, which amended and renumbered the provisions of former § 12-15-32 as § 12-15-117, Ala.Code 1975. Section 12-15-117 provides, in pertinent part:
“ ‘(a) Once a child has been adjudicated dependent, delinquent, or in need of supervision, jurisdiction of the juvenile court shall terminate when the child becomes 21 years of age unless, prior thereto, the judge of the juvenile court terminates its jurisdiction over the case involving the child.’
“By its plain terms, § 12-15-117(a) does not grant juvenile courts continuing jurisdiction over children unless they have been ‘adjudicated dependent, delinquent, or in need of supervision.’ Thus, this court has held that a juvenile court no longer has continuing jurisdiction over a child based solely on its having made a prior paternity determination. Ex parte T.C., 63 So.3d 627 (Ala.Civ.App.2010).”
L.N.K, 64 So.3d at 658.
Nevertheless, the juvenile court, pursuant to its emergency jurisdiction, could make orders necessary to protect the child. That jurisdiction authorizes a juvenile court, “on an emergency basis, [to] enter an order of protection or restraint to protect the health or safety of a child....” Ala.Code 1975, § 12-15-138. Thus, although we make no comment on the propriety of the procedure employed by the juvenile court in reaching its July 29, 2009, judgment, which altered the custodial and visitation rights of the father without prior notice to the father or his having an opportunity to be heard, compare Ala.Code 1975, § 12-15-139 (requiring notice and a hearing prior to issuance of protection orders), with Ala.Code 1975, § 12-15-141 (authorizing ex parte emergency protection orders to be entered without prior notice and a hearing in certain circumstances), based on evidence gathered in a circuit-court proceeding, see C.D.S. v. K.S.S., 978 So.2d 782 (Ala.Civ.App.2007) (granting a petition for a writ of mandamus directing the circuit court to vacate custody judgment that was based on findings of fact that were made in void juvenile-court proceedings), we hold that the *877 juvenile court had subject-matter jurisdiction to enter the July 29, 2009, judgment.
The record shows that the circuit court entered a second protection-from-abuse order on May 13, 2010, again awarding temporary custody of the child to the mother with no visitation by the father. On May 21, 2010, the mother filed in the juvenile court a petition to modify the original custody and visitation judgment, citing, among other reasons, the need to protect the child from abuse by the father. By agreement of the parties, the juvenile court extended the May 13, 2010, protection-from-abuse order and consolidated a hearing on the continuation of that order with the hearing on the mother’s petition to modify custody. Following that hearing, the juvenile court vacated the May 13, 2010, protection-from-abuse order, finding that there was no evidentiary basis for its entry. The juvenile court then proceeded to address the custody and visitation rights of the parties.
Those proceedings could also be viewed as properly invoking the emergency jurisdiction of the juvenile court. This time, however, the juvenile court determined that no emergency existed warranting an order or judgment for the protection of the child. The juvenile court found that the father was not committing any abuse, and the juvenile court did not order any temporary measures to address any perceived emergency. Having resolved that no emergency existed, the juvenile court effectively ended its jurisdiction under § 12-15-138. Thereafter, the case “evolved into a pure custody and visitation dispute between the parents,” R.T. v. B.N.H., 66 So.3d 807, 812 (Ala.Civ.App. 2011), over which the juvenile court lacked any jurisdiction. “The clear intent of the Legislature [in enacting the new Alabama Juvenile Justice Act, Ala.Code 1975, § 12-15-101 et seq.,] was to provide that the juvenile courts of this state should no longer be deciding custody disputes except insofar as their resolution is directly incidental to core juvenile-court jurisdiction.” Ex parte T.C., 63 So.3d 627, 630-31 (Ala.Civ. App.2010). Accordingly, the juvenile court had no power to modify the custody of the child and the visitation rights of the father based solely on changed circumstances as it purported to do.
We conclude that the juvenile court’s August 3, 2010, judgment is void for lack of subject-matter jurisdiction. Because the judgment from which the father appeals was entered without subject-matter jurisdiction, that judgment is void. R.T., 66 So.3d at 812. A void judgment will not support an appeal. Id. Thus, we dismiss this appeal, albeit with instructions to the juvenile court to vacate its August 3, 2010, judgment. Id. Any further proceedings concerning the custody of the child must be initiated in a circuit court, a “ ‘trial court[ ] of general jurisdiction.’ ” See Ex parte T.C., 63 So.3d at 631 (quoting Ala. Const. 1901, § 139(a) (Off. Recomp.)); see also EC. v. R.L.P., 67 So.3d 94, 96 (Ala.Civ.App.2011).[1]
APPEAL DISMISSED WITH INSTRUCTIONS.
BRYAN, J., concurs.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur in the result, without writings.

. The father also argues the merits of the August 3, 2010, judgment. Because we conclude that the juvenile court lacked subject-matter jurisdiction to enter that judgment, however, we do not reach that issue.